**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG**

**JASON BROWNING,**

      **Plaintiff,**

**v.**                                        **Civil Action No. 1:13-cv-23**
                                                      **(Judge Keeley)**

**NICKI SEIFERT ET AL.,**

      **Defendant.**

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

On February 11, 2013, *pro se* Plaintiff Jason Browning ("Plaintiff") filed a Complaint initiating this civil rights action pursuant to 42 U.S.C. § 1983. (Complaint, ECF No. 1). In the Complaint, Plaintiff seeks relief against Unit Manager Nicki Seifert ("Seifert"); Unit Manager Brandi Miller ("Miller"); Associate Warden of Programs ("A.W.P.") Greg Yahnke ("Yahnke"); Warden Evelyn Seifert ("E. Seifert"); Chaplain Michael Taylor("Taylor"); Religious Coordinator C.J. Ryder ("Ryder"); Commissioner of the West Virginia Division of Corrections, James Rubenstein ("Rubenstein"); Kitchen Supervisor Bob Yocum ("Yocum");[1] and, Commissary Supervisor Mary Ann Workman ("Workman"). (*Id.*) Defendant Yocum filed a Motion to Dismiss on May 2, 2013. (Def.'s Yocum Mot. to Dismiss, ECF No. 32). Defendants Seifert, Miller, Yahnke, E. Seifert, Taylor, Ryder and Rubenstein filed a Motion to Dismiss on May 2, 2013. (Defs. Seifert, et al., Mot. to Dismiss, ECF No. 35). Defendant Workman filed a Motion to Dismiss on July 2,

---

[1] Defendant Yocum states his name is incorrectly spelled in the Complaint and throughout. The correct spelling should be "Yocum" not "Yokum." For purposes of this Order, the Court will use the corrected spelling of Yocum.

2013.  (Def. Workman's Mot. to Dismiss, ECF No. 48).

On May 3, 2013, and July 8, 2013, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of his right to file a response and that a failure to respond could result in the entry of a dismissal order against him.  (ECF No. 38, 50). Plaintiff filed a Response in Opposition to Defendants' Motions to Dismiss on May 16, 2013.  (ECF No. 42).  Plaintiff filed a Response in Opposition to Defendants' Seifert, Miller, Yahnke, E. Seifert, Taylor, Ryder, Rubenstein, and Yocum Motions to Dismiss on June 10, 2013. (ECF No. 47). Plaintiff filed a Response in Opposition to Defendant Workman's Motion to Dismiss on August 9, 2013.  (ECF No. 59).  Defendants Seifert, Miller, Yahnke, E. Seifert, Taylor, Ryder, and Rubenstein replied on July 19, 2013.  (ECF No.  53).  Defendant Workman replied on July 26, 2013. (ECF No. 55).

Plaintiff filed a Motion for Preliminary Injunction on July 26, 2013 (ECF No. 56). Defendants Seifert, Miller, Yahnke, E. Seifert, Taylor, Ryder, and Rubenstein filed a Response to Motion for Preliminary Injunction on August 30, 2013.  (ECF No. 60).  Defendant Workman filed a Response to the Motion for a Preliminary Injunction  on August 30, 2013.  (ECF No. 61).  This case is now before the undersigned for a Report and Recommendation on Defendants' Motions to Dismiss [32], [35], [48] and Plaintiff's Motion for Preliminary Injunction [56].

## II.    CONTENTS OF THE PARTIES

### A.    *The Complaint*

In his Complaint, Plaintiff alleges that Defendants have violated his First Amendment right of free exercise of religion and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by:  (1) denying him a kosher diet; (2) denying him religious apparel; and (3) denying

him the right to worship weekly or on special holidays.  (Complaint, ECF. No. 9 at 4).[2]  Plaintiff also

states his Sixth Amendment and Eighth Amendment rights have been violated but does not allege

specific facts in furtherance of these claims.

In his Complaint, Plaintiff alleges a range of violations related to his right of free exercise

of religion.  The most prominent claim is that Plaintiff is denied a kosher diet.  (*Id.* at 9).  Plaintiff

alleges he has been denied his request for a kosher meal from the prison kitchen; instead he is

required to eat a vegetarian or non-pork alternative, neither of which are kosher.  (*Id.* at 9-14).  He

also alleges the prison Commissary does not offer an adequate selection of kosher foods, nor does

it properly label which foods are kosher.  (*Id.* at 14).  Plaintiff also requested a shipment of kosher

foods from the Aleph Institute, at no charge to the prison, which was denied.  (*Id.* at 9).  Plaintiff

further claims there are no weekly religious services available to him because the weekly Messianic

Jewish Studies that are offered, are not Orthodox Jewish services.  (*Id.* at 11).  Plaintiff explains that

Messianic Jews believe that Jesus is the Messiah while  Orthodox Jews believe that the Messiah has

not yet come. (*Id.* at 11).  Therefore, Plaintiff alleges that he is subjected to mental anguish knowing

that he has to attend these services and be ridiculed.  (*Id.*).  Plaintiff further alleges that he is not

allowed to wear traditional Jewish garments; specifically his yarmulke, which he requests to wear

at all times.  (*Id.*).  Plaintiff also claims he is denied participation in special holidays, including Rosh

Hashanah, Hanukkah, Yom Kippur, and Passover.  (*Id.*).  Further, he alleges that the Passover Seder

meal he was provided was "inadequate."  (*Id.* at 12).

As to specific Defendants, Plaintiff alleges that Defendant Seifert, the unit manager, was

---

[2] The Court utilizes the page numbering of the document filed using CM/ECF when
referring to Plaintiff's Complaint.

made aware of the denial of Plaintiff's kosher diet and did nothing to correct the problem. (*Id*. at 5). Five grievances were initiated through Defendant Miller, another unit manager, who also did nothing to correct the problems. (*Id*.).

Defendant Yahnke is the Associate Warden of Programs at the Northern Correctional Facility and has the authority to approve Plaintiff's list of religious requirements but according to Plaintiff, simply will not. (*Id*. at 6).

Defendant Taylor is the chaplain at the Northern Correctional Facility and Plaintiff claims it took the chaplain over three (3) years to get a Rabbi to conduct services for him. (*Id.*). Plaintiff also alleges that Defendant Taylor is aware of the violations as many grievances have been filed through him and that he is willfully denying his requests. (*Id.* at 7).

Defendant E. Seifert is the Warden at the Northern Regional Correctional Facility. Plaintiff alleges that Defendant E. Seifert is aware of all the grievances that Plaintiff has filed and that she has "willfully, deliberately, and methodically" denied his requests. (*Id.*).

Defendant Rubenstein is listed because he is the Commissioner of the West Virginia Department of Corrections and Plaintiff's grievances were appealed to him. (*Id.* at 8). Plaintiff complains that Defendant Rubenstein just "rubber stamped" the Warden's denial of his grievances without proper consideration. (*Id.*).

Defendant Ryder is the religious coordinator for the West Virginia Department of Corrections (*Id.*). Plaintiff alleges that Defendant Taylor has been in contact with Defendant Ryder regarding the denial of Plaintiff's grievances and therefore Defendant Ryder should be held accountable for the anti-Semitism shown toward Plaintiff. (*Id.*).

Defendant Yocum is the supervisor for ARAMARK Correctional Services, L.L.C.,

("ARAMARK").[3] (*Id.* at 9).  According to Plaintiff, ARAMARK caters to special diets of "Seven (7) Day Advents, Islam, Odinist, and Hera Christna," but not to his special kosher diet as an Orthodox Jew.  (*Id.*).

Lastly, Defendant Workman is the store supervisor for Keefe Store at Northern Correctional Facility.  (*Id.*).  Plaintiff complains that the store does not have kosher foods available and that Defendant Workman is responsible because she is the store supervisor.  (*Id.*).

Overall, Plaintiff alleges that Defendants deliberately denied his multiple requests and grievances regarding his kosher diet, religious items and religious services.  (*Id.* at 5-9). Plaintiff requests that all unconstitutional policies and procedures be corrected; that he be reimbursed any costs of this lawsuit; and that he be awarded punitive damages for his suffering.  (*Id.* at 9).

**B.      Defendants' Motions to Dismiss [32], [35], and [48]**

**1.      Defendant Yocum's Motion to Dismiss, or in the alternativem Motion for Summary Judgment [32]**

Defendant Yocum states he is a former employee of ARAMARK.  Defendant Yocum asserts two reasons the Complaint should be dismissed against him.  First, Defendant Yocum was not properly served pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. (Def. Yocum's Mot. to Dismiss, ECF No. 33 at 2). Second, Plaintiff fails to state a claim under 42 U.S.C. § 1983 because Defendant Yocum did not have authority to determine whether Plaintiff received a kosher diet and therefore did not act under the color of state law.  (*Id.*).

Defendant alleges that ARAMARK, a private company contracted by the State of West Virginia to provide food services in correctional facilities, has no role in determining the particular

---

[3] ARAMARK is a private company contracted by the State of West Virginia to provide food service at the Northern Correctional Facility and other correctional institutions in the state.

diet a prisoner receives. (*Id*. at 6). In this particular case, Plaintiff filled out a Religious Special Diet Request and Authorization Form on March 21, 2011 stating that he was requesting a Vegetarian Diet as a substitute for a Kosher Diet. (Def. Yocum's Mot. to Dismiss, ECF No. 32-2 at 2, Exhibit A). Defendant Yocum alleges that ARAMARK has not received any subsequent diet orders regarding Plaintiff. (ECF No. 33 at 7).

Accordingly, Defendant Yocum asserts the claims against him should be dismissed.

## 2. *Defendants Seifert, Miller, Rubenstein, Ryder, E. Seifert, Taylor and Yahnke's Motion to Dismiss [35]*

Defendants argue that they did not deprive Plaintiff of any rights afforded to him under the First, Sixth, and Eighth Amendments, R.L.U.I.P.A. and 42 U.S.C. § 1983. (Def. Seifert, et al. Mem., ECF No. 36, at 4). Defendants assert that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Criminal Procedure Rule 12(b)(6).

Specifically, Defendants outline their legal argument in six (6) sections: (1) the Eleventh Amendment precludes suit against state officials; (2) State officials are not persons under 42 U.S.C. § 1983; (3) Defendants are entitled to Sovereign Immunity under Article VI, Section 35 of the Constitution of West Virginia; (4) Claims against Warden Seifert fail because Plaintiff did not properly plead that the Warden was personally involved in the grievance procedure; (5) Plaintiff failed to exhaust the available administrative remedies; and (6) Punitive damages are barred by W. Va. Code § 55-17-4(3). (Def. Seifert, et al. Mem., ECF No. 36).

First, Defendants argue they are entitled to Eleventh Amendment immunity because the Division of Corrections ("DOC") is a state agency and they are employees of the D.O.C. and thus state officials. (*Id.* at 6). Defendants further argue that each employee was acting in their official

capacity in relation to the grievances filed by Plaintiff and thus cannot be sued under 42 U.S.C. § 1983. (*Id.* at 6-10). Defendants state that Plaintiff is also seeking damages, which means Defendants are protected by the Eleventh Amendment and can not be sued in their official capacity under 42 U.S.C. § 1983. (*Id.* at 10). Defendants similarly argue that pursuant to W. Va. Const. Art. VI, § 35 Plaintiff's case must be dismissed because under the West Virginia Constitution the State or agencies of the State can only be "defendants in a civil action wherein recovery is sought under and up to the limits of the State's liability insurance coverage." (*Id.* at 12).

Defendants further assert that the allegations against Defendant E. Seifert appear to be based solely on her supervisory role as warden and that claim fails as a matter of law under 42 U.S.C. § 1983, because that is not the type of personal involvement required to state a claim under that statute. (*Id.* at 13).

Defendants also allege that Plaintiff did not exhaust his administrative remedies. (*Id.* at 14). Defendants assert that Plaintiff did not submit final responses to the grievances he attached to his Complaint. (*Id*. at 15-17). Therefore, his complaint should also be dismissed for failure to exhaust administrative remedies. (*Id*.)

### 3. Defendant Workman's Motion to Dismiss [48]

Defendant Workman is the supervisor of the Commissary operated by her employer, Keefe Commissary Network, L.L.C., at the prison facility. (Def. Workman Mem., ECF No. 49 at 1.) Defendant Workman asserts that the Complaint against her should be dismissed because she has no right to change any item on the Commissary menu. (*Id.* at 2). Furthermore, Plaintiff makes no allegation of wrongdoing on the part of Defendant Workman other than she is the supervisor. (*Id*.).

## C. Plaintiff's Responses to Motions to Dismiss [47] and [54]

In Plaintiff's Response [47] to Defendant Yocum's Motion [32], Plaintiff asserts that Defendant Yocum was properly served and that Defendant Yocum was aware Plaintiff's rights were being violated and that "Following Orders" is no excuse. (Resp. in Opp'n to [32] & [35], ECF No. 47 at 2). Plaintiffs does not cite any authority to support these assertions. (*Id.*).

In Plaintiff's Response [47] to Defendants' Motion [35], Plaintiff agrees that the Defendants cannot be sued in their official capacity for monetary damages, but asserts that they can be sued in such capacity for declaratory and injunctive relief. (*Id.*). Plaintiff asserts that he has done all he knows how to do in the grievance process and believes that he has exhausted his administrative remedies. (*Id.* at 5). Plaintiff further asserts that he has adequately asserted what the Defendants have done to obstruct his religious practice and if there is any deficiency in Plaintiff's pleading that the court should allow him to correct that deficiency. (*Id.* at 7.)

In Plaintiff's Response [54] to Defendant Workman's Motion [48], Plaintiff asserts that Defendant Workman's employee, Wilson, replied to Plaintiff's grievance by stating that she would address it with the associate warden of operations. (Resp. in Opp'n to Workman's Mot. [48], ECF No. 54 at 2). Therefore, Defendant Workman could also bring it to the attention of the associate warden of operations and get it changed. (*Id.* at 2-5.)

## D.    *Defendants' Reply [53] and [55]*

Defendants' Reply [53] does not address any new grounds for dismissal or any different facts or law that were not presented in their original Motion to Dismiss [35]. (Def. Seifert, et al. Reply, ECF No. 53 at 1-7). Defendant Workman's Reply [55] does not address any new grounds for dismissal or any new facts or law regarding her original Motion to Dismiss [48]. (Def. Workman's Reply, ECF No. 55).

### E.    *Plaintiff's Motion for Preliminary Injunction [56]*

Plaintiff's Motion for Preliminary Injunction [56] requests that the Courts require that (1) he be provided a kosher diet; (2) he be allowed to wear his yarmulke at all times; and (3) he be permitted to not shave his facial hair until the Court reaches a final decision in this matter.  (Mot. for Prelim. Inj., ECF No. 56 at 1).

### F.    *Defendants' Responses to Motion for Preliminary Injunction [59], [60], and [61]*

#### 1.    *Defendant Yocum's Response to Motion for Preliminary Injunction  [59]*

Defendant Yocum asserts that Plaintiff's Motion for Preliminary Injunction must be denied because Plaintiff has not established that he is likely to succeed on the merits in this action; that he is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in his favor; or that an injunction is in the public interest.  *See Winter v. Natural Res. Def. Council, Inc*. 555 U.S. 7, 120, 129 S.Ct. 365, 374 (2008).  (Yocum's Resp. to Prelim.  Inj., ECF No. 59 at 1-2).

Defendant Yocum argues that Plaintiff is not likely to succeed on the merits in this action because Defendant Yocum was not properly served and further has no role in choosing whether an inmate receives a particular diet.  (*Id*. at 3).  Further, Plaintiff has not shown any irreparable harm in the absence of preliminary relief.  (*Id*.).  Plaintiff is being provided a vegetarian diet as a substitute for a kosher diet.  (*Id*. at 4).   Lastly, Defendant Yocum argues that Plaintiff has not shown the balance of equities and public interest favor a preliminary injunction in this matter.  (*Id*.). Plaintiff's vegetarian diet has been approved by the prison religious authority as an appropriate alternative to a kosher diet and Plaintiff agreed to receive a vegetarian diet.  (*Id*.).  Therefore, Defendant Yocum asserts that Plaintiff is not entitled to Preliminary Injunctive Relief.

## 2. Defendants Miller, Rubenstein, Ryder, E. Seifert, Seifert, Taylor and Yahnke's Response to Motion for Preliminary Injunction [60]

Defendants' Miller, Rubenstein, Ryder, E. Seifert, Seifert, Taylor and Yahnke agree with Defendant Yocum that there are four factors that must be evaluated before a court may grant a preliminary injunction. (Def. Seifert, et al.' Response to Mot. Prelim. Inj., ECF No. 60 at 1-2). Defendants reassert their arguments contained in their Motion to Dismiss [35] and Memorandum [36] and Reply [53]. (*Id*. at 4). Defendants assert that Plaintiff cannot succeed upon the merits because they are not "persons" under 42 U.S.C. §1983; that Defendants are entitled to sovereign immunity and that Plaintiff did not exhaust his administrative remedies. (*Id.* at 4-8). Further, Defendants assert that Defendant Yahnke wrote a Memorandum on June 14, 2012, explaining to Plaintiff that for security reasons the Northern Correctional Facility only permits Jewish inmates to wear yarmulke in their cell and during religious services. (*Id*. at 6).

Further Defendants assert that Plaintiff has not demonstrated a substantial burden upon his religious practices and Defendants have shown a compelling government interest which is being accomplished by the least restrictive means possible. (*Id*. at 6). Defendants state that Plaintiff's claim regarding being required to shave fails for the same reasons. (*Id*. at 7). Similarly, Defendants believe Plaintiff's claims regarding his kosher diet will also fail. (*Id.*). Plaintiff agreed to receive a vegetarian diet and executed a Religious Special Diet Request and Authorization Form. (Def. Yocum's Mot. to Dismiss, ECF No. 32-2, Exhibit A).

The second factor requires Plaintiff to make a clear showing of irreparable harm if the preliminary injunction is not granted. Defendants argue Plaintiff has made no such showing. (*Id*. at 8). The third factor requires Plaintiff to show that the balance of equities tips in his favor and the fourth factor requires him to show that the public interest is served by providing him with injunctive

relief.  (*Id.* at 9).  Defendants assert that the balance of equities tips in favor of the government as they have certain rules in place to protect other inmates and staff that are contrary to Plaintiff's requests.  (*Id.*).  Lastly,  Defendants' assert that the public interest is also best served by denying this relief as his request is an additional cost and interferes with security issues.  (*Id.* ).

### 3.  *Defendant Workman's Response to Motion for Preliminary Injunction  [61]*

Defendant Workman simply joins in the other Defendants' responses.  ( Workman's Resp. to Mot. Prelim. Inj., ECF No. 61 at 1).

## III.    STANDARD OF REVIEW

### A.    *Motions to Dismiss*

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations.  *Advanced Health-Care Services, Inc. v. Radford Community Hosp.*, 910 F.2d 139, 143 (4th Cir. 1990).  Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. *Id*.  In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable."  *Id*. at 555, 570.  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In other words, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Conley*, 355 U.S. at 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

### B.  *Motion for Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Fed. Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir. 1990). In applying the standard for summary judgment, a court must review all the evidence "in the light most favorable to the nonmoving party." *Celotex Corp.*, 477 U.S. at 322-23. The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In *Celotex*, the Supreme Court held that the moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. *Celotex*, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Id.* at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. *Anderson*, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587 (citation omitted).

C.      *42 U.S.C. §1983*

42 U.S.C.§ 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage.....subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights...secured by the Constitution and laws, shall be liable to the party injured in any action at law...or suit in equity.

Therefore, the initial inquiry in a § 1983 case is as follows: (1) was the conduct complained of committed by a person acting under the color of state law and (2) did that conduct deprive the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995); *Harvey v. Harvey*, 949 F. 2d 1127, 1130 (11th Cir. 1992).

Whether a constitutional right is alleged to have been violated is usually clear, but the under color of law requirement has been subject to more debate. "As a general rule, 'a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.'" *Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir. 1994) (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988)); *see also Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 936 n.18 (1982) (finding that "state employment is generally sufficient to render the defendant a state actor"). Accordingly, any person acting with a badge of authority given to them by virtue of their position with the state who violates a person's constitutional rights is subject to liability for the unconstitutional act. *See West,* 487 U.S. at 49 *(citing United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Monroe v. Pape*, 365 U.S. 167, 187 (1961).

## D.      First Amendment: Free Exercise Clause Violation

Prisoners retain their constitutional rights to freedom of religion pursuant to the First Amendment. *See Turner v. Safley*, 482 U.S. 78, 84 (1987) (stating that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution."). As such, prisoners must be given "reasonable" opportunities to practice their religion. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). However, the Supreme Court has further cautioned that "courts are ill equipped to deal with the increasingly urgent problems of prison administration." *Lovelace v. Lee,* 472 F.3d 174, 199 (4th

Cir. 2006) (*citing Procunier v. Martinez*, 416 U.S. 396, 405 (1974)).  Thus, "courts must accord deference to the officials who run a prison, overseeing and coordinating its many aspects, including security, discipline, and general administration." *Id.* (*citing O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349-50 (1987); *Turner*, 482 U.S. at 84-85).

 In order to achieve this deference, in part, the Supreme Court revisited the level of scrutiny applied to constitutional claims raised by people currently incarcerated.   The Supreme Court thus held that when an incarcerated person alleges a prison regulation or policy violates their constitutional rights, the "regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89 (defining the appropriate standard as requiring rational basis, not strict scrutiny analysis).  In lowering the standard of review, the Court reasoned that "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.*

The *Turner* court laid out four factors for the court to consider when "determining the reasonableness of the regulation at issue." *Id.*  The test asks:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

*Lovelace,* 472 F.3d at 200 (*citing Turner*, 482 U.S. at 89–92 (internal quotation marks and citations omitted)). Therefore, when determining the reasonableness of a prison regulation, the court must apply this four factor *Turner* test.

**E.      RLUIPA, 42 U.S.C. §§ 2000cc et seq.**

Plaintiff also alleges a statutory claim under the RLUIPA.  Congress enacted RLUIPA in 2000 "because it found that some prisons have restricted religious liberty 'in egregious and unnecessary ways.'" *Lovelace*, 472 F.3d at 182 (*citing* 146 Cong. Rec. S7775 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy).  Thus, the RLUIPA guarantees incarcerated people greater freedom to engage in religious conduct than does the First Amendment.  According to RLUIPA, a government is prevented from imposing a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that the imposition of the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1; *see also Cutter v. Wilkinson*, 544 U.S. 709. 717 (2005) (upholding RLUIPA's constitutionality).  In sum, RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  *Cutter*, 544 U.S. at 718.

When analyzing a claim under RLUIPA, the court must determine whether the government program or activity at issue receives federal financial assistance.  *See* 42 U.S.C. § 2000cc-1(b)(1).[4] When analyzing the substance of the claim, the burden of persuasion is on the plaintiff to demonstrate that the "government practice that is challenged by the claim substantially burdens the

_____

[4] RLUIPA also applies in a case when "the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b)(2).

plaintiff's exercise of religion." 42 U.S.C. § 2000cc-2(b). Under RLUIPA, "religious exercise" is broadly defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Once the court determines whether the plaintiff's claim involves a "religious exercise," then the court must assess whether the burden was "substantial." 42 U.S.C. § 2000cc-2(b). The Fourth Circuit followed the Supreme Court's guidance in First Amendment Free Exercise Clause cases and found that "for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace*, 472 F.3d at 187 (*citing Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718, 101 S.Ct. 1425 (1981)).

Once the plaintiff demonstrates that a government practice substantially burdens their exercise of religion, the burden shifts to the defendant to show that the government practice or policy is "the least restrictive means of furthering a compelling government interest." *See Id.* at 189. When applying the "compelling government interest" standard, the court must consider the "context" of the claim and apply the standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* at 189-90 (*citing Cutter v. Wilkinson*, 544 U.S. 709, 723, 125 S.Ct. 2113 (2005)). The court is to pay particular consideration to security concerns. *Id.* Moreover, RLUIPA is not meant to "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Id.*

## IV. DISCUSSION

### A. *Defendant Yocum*

Defendant Yocum argues that the complaint against him must be dismissed because (1) he was not properly served under Rule 4(e) and (2) Plaintiff failed to state a claim under 42 U.S.C. § 1983 because "Defendant Yocum did not act under the color of state law because he did not have the authority to determine whether Plaintiff receives a Kosher diet." (*Id.*)

Defendant Yocum is a former employee of ARAMARK Correctional Services, L.L.C..[5] (Def. Yocum Mem., ECF. No. 33 at 2). In support of Defendant Yocum's substantive argument, Defendant Yocum states that ARAMARK was "ordered to provide Plaintiff with a vegetarian diet because it was determined by the prison chaplain that such diet meets Plaintiff's religious needs." (*Id.*). As such, "ARAMARK is contractually obligated to provide him with such diet." (*Id.*). In sum, Defendant Yocum did not have the authority to determine whether Plaintiff received a kosher diet nor did he have any right to change Plaintiff's diet. (*Id.*).

With regard to Defendant Yocum, Plaintiff has failed to establish that Defendant was personally involved in any violation of his constitutional rights. "In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Plaintiff failed to show sufficient personal involvement by Defendant Yocum in denying Plaintiff access to kosher food. Defendant did not have the authority or discretion to grant Plaintiff's request to receive kosher food or to affirmatively deny Plaintiff's request for kosher food. Defendant Yocum merely provided the food requested on the W.Va. Division of Corrections Religious Special Diet Request and Authorization Form. (Def. Yocum Mot. to Dismiss., ECF. No. 32-2, Exhibit A)

---

[5] ARAMARK Correctional Services, L.L.C. is a private company that has received a contract to provide food services in the Northern Correctional Facility.

Thus the undersigned finds that Defendant Yocum's Motion to Dismiss or in the alternative Motion for Summary Judgment [32] should be **GRANTED**, pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no genuine issue as to any material fact and Defendant Yocum is entitled to a judgment as a matter of law.[6]

## B.    *Defendant Workman*

Defendant Workman is the supervisor of the Commissary store, which is operated by Keefe Commissary Network, L.L.C., at the Northern Correctional Facility.  (Def. Workman's Mem., ECF No. 49 at 1).  In support of Defendant Workman's Motion to Dismiss pursuant to 12(b)(6), Defendant Workman states that "there is no allegation that Mary Ann Workman had the right to change any item on the Commissary menu nor that she took any action under color of State law." (*Id.* at 2).  The prison facility contracted with Defendant Workman's employer and the prison sets the prisoner's menu, not Defendant Workman nor any of the Commissary employees.  (*Id.*)

With regard to Defendant Workman, Plaintiff has failed to establish that Defendant was personally involved in any violation of his constitutional rights.  "In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'"  *Wright*, 766 F.2d at 850 (citing *Vinnedge*, 550 F.2d at 928). Plaintiff failed to show sufficient personal involvement by Defendant Workman in denying Plaintiff access to kosher food.  Defendant did not have the authority or discretion to grant Plaintiff's request to receive kosher food or to affirmatively deny Plaintiff's request for kosher food. Defendant Workman exercised no control or decision-making authority in what products may be offered on the Commissary menu at the Northern Correctional Facility.

---

[6] Because Defendant Yocum is entitled to relief on the merits, the undersigned sees no need to determine whether he was properly served under Fed. R. Civ. P. 4(e).

The undersigned finds that Defendant Workman's Motion to Dismiss [48] should be **GRANTED** pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim against Defendant Workman upon which relief can be granted.

### C.   *Defendants Seifert, Miller, Yahnke, E. Seifert, Taylor, Ryder, and Rubenstein*

Defendants' Motion to Dismiss [35] asserts the following six grounds for dismissal of Defendants in this action: (a) Eleventh Amendment precludes suit against state officials; (b) State Officials are not persons under 42 U.S.C. § 1983; (c) Defendants are entitled to Sovereign Immunity under Article VI, Section 35 of the Constitution of West Virginia; (d) Claims against Warden Seifert fail because Plaintiff did not properly plead that the Warden was personally involved in the grievance procedure; (e) Plaintiff failed to exhaust the available administrative remedies; and (f) Punitive damages are barred by W.Va. Code § 55-17-4(3). (Def. Seifert, et al.' Mem., ECF No. 36).

#### 1.   *Eleventh Amendment Immunity*

Defendants contend that the Complaint should be dismissed because they are entitled to immunity under the Eleventh Amendment to the United States Constitution.  (Def. Seifert, et al.' Mem, ECF No. 36 at 6-10).

Defendants' argument fails because Plaintiff's Complaint also seeks injunctive relief under § 1983 and may also allege claims against Defendants in their individual capacities, as discussed above.  A lawsuit instituted under § 1983 against state officials in their official capacity is barred by the Eleventh Amendment when it seeks money from the state treasury in the form of damages. *See Will v. Michigan Dep't of St. Police*, 491 U.S. 58 (1989).  However, *Will* also makes clear that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n.10 (*citing  Kentucky v. Graham,* 473 U.S., at 167, n. 14); *Ex*

*parte Young,* 209 U.S. 123, 159-160(1908). Moreover, suits for damages against state officials sued in their individual capacity are not barred. *See Hafer v. Melo*, 502 U.S. 21 (1991); *Goodman v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).

Defendants' argument that Plaintiff's Complaint should be dismissed because Defendants are entitled to immunity under the Eleventh Amendment is based on an incorrect and incomplete reading of §1983 case law. As discussed above, the Eleventh Amendment only bars a § 1983 suit based on monetary damages against state officials when sued in their official capacity. Accordingly, because the Eleventh Amendment does not bar Plaintiff's § 1983 claims for prospective injunctive relief or Plaintiff's claims for damages against Defendants in their individual capacities, Defendants' Motion to Dismiss [35] on this ground must be **DENIED**.

2.      ***Plaintiff's § 1983 Claims Against State Officials in their Official or Individual Capacities***

Defendants make a blanket assertion that Plaintiff's Complaint should be dismissed because, as state officials, they cannot be sued in their official capacity under 42 U.S.C. § 1983. (Def. Seifert, et al.' Mem., ECF No. 36, at 10-11) (*citing Pruitt v. W. Va. Dept. Of Public Safety*, 222 W.Va. 290, 292, 664 S.E. 2d 175, 177 (W.Va. 2008). As discussed above, Defendants incorrectly applied the law as related to bringing § 1983 claims against state officials; specifically, there is no bar to Plaintiff's claims against state officials in their official capacities for prospective injunctive relief or Plaintiff's claims against state officials in their individual capacities for monetary damages. In their Motion to Dismiss, Defendants discuss at length in both section one and section two of their legal argument that Plaintiff's claims are only brought against Defendants in their official capacities. (Def. Seifert, et al. Mem., ECF No. 36 at 6-11). Defendants conclude that "there is no question that Plaintiff has only alleged official capacity claims against these Defendants" because "Plaintiff's

claims against these Defendants relate to duties performed by these Defendants in their official capacities as employees of DOC." (ECF No. 36, Def.'s Mem. in Supp. at 7). The issue the Court now considers is whether Plaintiff has alleged claims against Defendants in both their official or individual capacities.

Other than Defendant E. Seifert, where Plaintiff specifically states that she is being sued both individually and in her official capacity, there is nothing else in the complaint that states that the remaining Defendants are being sued in their official capacity or individual capacity. On the form complaint it asks Plaintiff to name Defendants. Then, it asks Plaintiff to list the defendant's position, place of employment, and address. The Clerk of the Court then opens the case according to the information provided. Complaints filed by a *pro se* plaintiff are held to a less stringent standard than those developed by a lawyer, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1971), especially when the complaint alleges violations of a plaintiff's civil rights. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Laboke v. City of Fairmont*, 208 F.3d 209, *1 (4th Cir. 2000) (unpublished) (finding that *pro se* plaintiffs are entitled to the court's most liberal reading of the allegations," and "[w]hen a complaint is broad in nature, the court should use pretrial conference, discovery, and/or summary judgment to define the issues, not dismissal for failure to state a claim").

Here, as mentioned, Plaintiff has not asserted whether he is suing Defendants in their official or individual capacities. Further, the grounds for relief, as stated in the Complaint, seek, among other things, injunctive relief, punitive damages and other monetary relief. Given the liberal standards set forth, and in the spirit of allowing a *pro se* plaintiff to develop meritorious claims, the Court will construe the Complaint as suing the officers and administrator in their individual and official capacities. At the very least, Plaintiff should be entitled to amend his complaint to include

this language. *See, e.g., Williams-El v. Dunning*, 816 F. Supp. 418, 421 (E.D. Va. 1993) (allowing a *pro se* plaintiff to correct a pleading technicality in naming officers in their official capacity to amend the complaint).[7]

Accordingly, the undersigned finds that Plaintiff's intention was to sue Defendants in both their individual and official capacity. Although it is clear that neither a state agency nor a state official in his official capacity can be sued for monetary damages, Defendants can be sued in their official capacities for injunctive relief or in their individual capacities for monetary damages. *See Will*, 491 U.S. at 71. Therefore, Defendants cannot be dismissed from this action on this ground.

### 3. Defendants are Entitled to Sovereign Immunity under Article VI, Section 35 of the Constitution of West Virginia.

The Court can summarily dispose of Defendants' argument as to why this complaint should be dismissed because it is based on state law grounds. Defendants contend that Plaintiff's case must be dismissed because pursuant to Article VI, Section 35 of the West Virginia Constitution, the State, state agencies and state employees are entitled to sovereign immunity. (Def. Seifert, et al.'s Mem., ECF No. 36 at 11). Defendants cite *Pittsburgh Elevator Co. v. W. Va. Board of Regents,* 310 S.E.2d 675, 676 (W. Va. 1983), which requires a plaintiff suing a state agency, in order to circumvent immunity of the agency, to allege that recovery is sought not from state funds, but from the State's liability insurance coverage.

---

[7] However, even if Plaintiff did not seek leave to amend his Complaint, it is important to note that a plaintiff need not expressly plead whether a defendant is being sued in their individual or official capacity. *See Biggs v. Meadows*, 66 F.3d 56, 58 (4th Cir. 1995). In adopting the view held by the majority of circuits, the Fourth Circuit held that the district courts must look to the "substance of the complaint, the relief sought, and the course of proceedings to determine the nature of a plaintiff's claims." *(Id.)*. The Fourth Circuit gave the district courts some factors to consider, including: (1) whether the complaint alleges a policy or custom, because those allegations are only relevant in an official capacity suit; (2) whether the complaint seeks compensatory or punitive damages, because those damages are not available in an official capacity suit; and (3) whether the defendant has asserted a qualified immunity defense, because that defense is only available in individual capacity suits. *(Id.* at 61). Throughout this examination of the complaint, "the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *(Id.)*

While a plaintiff would have to comply with this requirement in federal court if the court's jurisdiction was based upon diversity of the parties, it is clear that it would not be required in cases such as this that are before the court of the federal question presented. Succinctly put, "[a] state legislature has no authority to determine whether or how an action may proceed under federal law." *Cunningham v. West Virginia*, 6:06-cv-169, 2007 WL 895866, at *5 (S.D. W. Va. Mar. 22, 2007); *see also Patsy v. Bd. of Reg. of State of Fl.*, 457 U.S. 496, 516 (1983); *Steffel v. Thompson*, 415 U.S. 452, 472-73 (1974) (stating that "[w]hen federal claims are premised on [§ 1983] – as they are here – we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights.") Accordingly, this ground is unfounded and fails to serve as a valid ground justifying dismissal of Plaintiff's suit.

### 4. *Claims against Warden Seifert fail because Plaintiff did not properly plead that the Warden was not personally involved in the grievance procedure*

This argument specifically focuses on Plaintiff's claims against Defendant E. Seifert, Warden of the Northern Correctional Facility. Defendant argues that she should be dismissed from this action because she was not personally involved in the alleged wrong and her liability cannot be predicated solely under the theory of *respondeat superior*. (Def. Seifert, et al.'s Mem., ECF No. 36 at 13).

For authority, Defendant cites to a report and recommendation issued by the undersigned in *Grass v. Proctor*, 2010 U.S. Dist. LEXIS 1345777, at 9 (N.D.W. Va. 2010). The *Grass* case involves an Eighth Amendment claim with respect to medical care received in prison. (*Id.*). In *Grass*, Warden Hoke asserts in his motion to dismiss that the complaint pertains to medical decisions made by Dr. Proctor and his only role was denying inmate's grievance. (*Id.*). The *Grass*

case is distinguishable from Mr. Browning's case. Here, the Complaint involves the implementation of prison policies and the decisions of prison administrators, which have resulted in Plaintiff being denied kosher meals, religious apparel, participation in special Jewish holidays, permission to cease shaving, etc. The *Grass* case references the difference stating "when a supervisor is not personally involved in wrongdoing he may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom for which he is responsible" or certain elements are established. *Grass* at 3; *see also Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir).

The undersigned finds that whether Defendant E. Seiffert was personally involved in the creating or drafting the challenged policies and in denial of Plaintiff's religious requests through the grievance procedure requires further discussion and is an issue more appropriately presented in a motion for summary judgment. Therefore, it is recommended that Defendants' Motion to Dismiss [35] be denied on this ground.

### 5.    *Exhaustion of Administrative Remedies under § 1997e*

Under the Prison Litigation Reform Act of 1995 (PLRA), as amended, prisoners must exhaust the grievance procedure in the institution where they are incarcerated prior to filing suit in federal court challenging prison conditions. 42 U.S.C.A. § 1997e(a). In *Jones v. Bock*, the United States Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints," nor do they have the burden of proving it. 549 U.S. 199, 216 (2007); *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).[8] Further, the Court has held that "proper exhaustion" is required, meaning that the inmate must follow the prison's administrative rules as required, including when

---

[8]   A district court may also raise the affirmative defense of exhaustion *sua sponte*, so long as the Plaintiff is given an opportunity to respond. *See Anderson v. XYZ Corr. Health Svcs., Inc.*, 407 F.3d 674 (4th Cir. 2005).

and how to file the complaint. *See Woodford v. Ngo*, 548 U.S. 81 (2006).

The West Virginia Jail and Correctional Facility Authority's *Handbook of Inmate Rules and Procedures*[9] sets forth the following five step process for grievances:

1. If an inmate wishes to use the grievance procedure, jail personnel will provide the inmate with an inmate with an inmate grievance form.

2. The inmate shall complete the form, addressed to the Administrator; the form, as completed by the inmate, shall be transmitted to the Administrator's office by jail personnel without being read or altered and within a reasonable time, not later than the end of the shift.

3. The Administrator upon receipt of the grievance may reject the grievance if it appears on its face to have been filed in bad faith.

4. The Administrator, if the grievance is not rejected pursuant to Paragraph 3, shall provide the inmate an opportunity to be heard before a decision is made on the grievance. The Administrator may assign a staff member to investigate the complaint and report written findings within forty-eight hours and shall inform the inmate of such action.

5. The Administrator shall provide a written decision with regard to the grievance to the grieving inmate within twenty-four (24) hours of the receipt of the investigation report. Such written decision shall include a statement of the action taken concerning the grievance, the reasons for such action, and procedures for appeal of the decision.

Further, if an inmate is dissatisfied with the Administrator's decision, he must file an appeal to the Executive Director within five days of the receipt of the Administrator's decision, and must include a copy of the initial complaint and the Administrator's decision.

Although the burden is not on Plaintiff to plead exhaustion, the § 1983 form complaint of

---

[9] *Available at:* http://apps.sos.wv.gov/adlaw/csr/readfile.aspx?DocId=18978&Format=PDF

this Court that is given to inmates asks if the inmate followed the grievance procedure, and to attach grievances and responses. Plaintiff attached several grievances to his complaint relating to his claims. Three of those claims were clearly exhausted.

In sum, the Complaint sets forth sufficient allegations that are plausible on their face to survive a motion to dismiss.[10] The Defendants have improperly assumed that the burden is on Plaintiff to plead exhaustion, *see Jones*, *supra*, and have failed to meet their burden in proving that Plaintiff has not exhausted his claims. Accordingly, the Court finds no merit on this ground.

### 6.     *Punitive damages Are Barred by W. Va. Code § 55-17-4(3)*

This statute does not support dismissal of any of these defendants. It merely states that under West Virginia law "no government agency may be ordered to pay punitive damages in any action." W.Va. Code § 55-17-4(3). The issues regarding individual capacity and official capacity and the damages that are allowed in each have been discussed above. In addition, the court may summarily dispose of Defendants' argument for dismissal on this ground because it is based on state law grounds. Therefore, the undersigned finds that this code section is not a ground for dismissal.

### D.     *Plaintiff's Motion for Preliminary Injunction [ 56 ]*

In this motion, Plaintiff reasserts the grievances in his Complaint as requiring preliminary injunctive relief. The Fourth Circuit has held that in order to obtain preliminary injunctive relief:

> ...plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is

---

[10] Attached to the Complaint are grievances filed by the Plaintiff that appear to have been exhausted: 10–NCF-Cpod-489 Kosher food-Affirmed Grievance Denied 12/23/10; 12-NCC-D2-130 Shaving (App. C)-Affirmed Grievance Denied 6/14/12; 12-NCF-D2-148 (App. E) Hanukkah-Affirmed Grievance Denied after 7-17-2012.

There are also grievances for the following which the Court can not determine whether they have been exhausted: Denial of Religious Apparel; Denial of ability to worship daily asserting that Messianic Jews are not the same as Orthodox Jews; Denial of other special holidays, such as Yom Kippur, Rosh Hashana.

likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter,* 129 S.Ct. at 374. And all four requirements must be satisfied. Indeed, the Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375–76.

*Real Truth About Obama, Inc. v. Federal Election Com'n,* 575 F.3d 342, 346 (4th Cir. 2009);

*(quoting Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)). A court will not

grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will likely

succeed on the merits at trial. *Id*. at 346. The plaintiff must also make a "clear showing" that he will

be irreparably harmed absent preliminary relief. *Id.* at 347. Lastly, when balancing the equities in

steps three and four, courts should "pay particular regard for the public consequences in employing

the extraordinary remedy of injunction." *Id.*

Even if Plaintiff prevails on the merits, which is unlikely, the Court finds that Plaintiff failed

to make a clear showing that he will be irreparably harmed absent preliminary relief for these

requests. The Plaintiff alleges in his Complaint that he has been living under these conditions since

2008. (Complaint, ECF No. 9 at 9). Since the Plaintiff has been living under these conditions for

over five years, he has not clearly shown and can not clearly show that he will be irreparably harmed

if he is not granted relief pending a final decision of this court. Accordingly, since Plaintiff has not

satisfied all four factors, the undersigned recommends that his motion for preliminary injunctive

relief [ECF No. 56] be **DENIED**.

## V.  RECOMMENDATION

For the reasons stated herein, the undersigned **RECOMMENDS** that **Defendant Yocum's**

**Motion to Dismiss and Alternatively Motion for Summary Judgment (ECF No. 32)** be

**GRANTED** pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no genuine issue as to a material fact that Defendant Yocum did not have sufficient personal involvement in the alleged violations of Plaintiff's civil rights.

The undersigned **RECOMMENDS** that **Defendant Workman's Motion to Dismiss (ECF No. 48)** be **GRANTED** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, as Defendant Workman had no involvement in the alleged violations of Plaintiff's civil rights.

The undersigned **RECOMMENDS** that the **Defendants'** *Seifert, Miller, Yahnke, E. Seifert, Taylor, Ryder, and Rubenstein's* **Motion to Dismiss** [ECF No. 35] be **DENIED**, and those Defendants be **ORDERED** to **ANSWER** the Complaint.

It is further recommended that **Plaintiff's Motion for Preliminary Injunction [ECF No. 56]** be **DENIED**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for

Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Plaintiff.

ADDITIONALLY, COUNSEL FOR DEFENDANTS' SEIFERT, ET. AL., HAS CONTENDED IN THIS ACTION THAT ELEVENTH AMENDMENT IMMUNITY IS APPLICABLE AND THUS WARRANTS DISMISSAL OF PLAINTIFF'S COMPLAINT. COUNSEL FOR DEFENDANTS' SEIFERT, ET AL., SHALL FILE WITHIN FOURTEEN (14) DAYS OF THE DATE OF THIS ORDER, A WRITTEN MEMORANDUM EXPLAINING HOW THIS ELEVENTH AMENDMENT IMMUNITY APPLIES TO THIS ACTION FILED IN FEDERAL COURT.

**DATED:** January 28, 2014

/s/James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE