```
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**JASON BROWNING,**

   **Plaintiff,**

**v.**        **//  CIVIL ACTION NO. 1:13CV23**
             **(Judge Keeley)**

**NICKI SEIFERT ET AL.,**

   **Defendants.**

### MEMORANDUM OPINION AND ORDER ADOPTING THE REPORT AND RECOMMENDATION [Dkt. No. 66]

Pending before the Court is the magistrate judge's Report and Recommendation ("R&R"), (dkt. no. 66), concerning the motion to dismiss, or in the alternative, motion for summary judgment, (dkt. No 32), filed by the defendant, Robert Yokum ("Yokum"); the motion to dismiss, (dkt. no. 48), filed by the defendant, Mary Ann Workman ("Workman"); the motion to dismiss, (dkt. no. 35), filed by the defendants, Nicki Seifert ("N. Seifert"), Michael Taylor ("Taylor"), Brandi Miller ("Miller"), Evelyn Seifert ("E. Seifert"), James Rubenstein ("Rubenstein"), C.J. Ryder ("Ryder"), and Greg Yahnke ("Yahnke") (collectively "the defendants"); and the motion for preliminary injunction, (dkt. no. 56), filed by the pro se plaintiff, inmate Jason Browning ("Browning"). For the reasons that follow, the Court **ADOPTS** the recommendation in the magistrate judge's R&R.

### I. PROCEDURAL HISTORY

On February 11, 2013, Browning filed a complaint with this Court seeking relief pursuant to 42 U.S.C. § 1983. (Dkt. No. 1).

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 66]**

His complaint alleges that the defendants have violated his First Amendment right of free exercise of religion and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by 1) denying him a kosher diet, 2) denying him the ability to wear religious apparel, and 3) denying him the right to worship weekly and on special holidays. Id.

The defendants filed motions seeking dismissal of Browning's complaint for failure to state a claim upon which relief may be granted. Yokum filed a Motion to Dismiss on May 2, 2013; N. Seifert, Miller, Yahnke, E. Seifert, Taylor, Ryder, and Rubenstein filed a Motion to Dismiss on May 2, 2013; and Workman filed a Motion to Dismiss on July 2, 2013.

In accord with LR PL P 2, Magistrate Judge James E. Seibert undertook an initial screening of the case and, on May 3, 2013, issued a Roseboro notice to Browning that instructed him to respond to the motions filed by Yokum and N. Seifert, Taylor, Miller, E. Seifert, Rubenstein, Ryder, and Yahnke within 21 days. Browning filed a motion for enlargement of time to respond to the motions to dismiss, (dkt. no. 41), which the magistrate judge granted.[1] He then filed a response in opposition to both motions on June 10,

---

[1] The magistrate judge extended Browning's time to respond to July 16, 2013.

2013. (Dkt. No. 47). The magistrate judge issued a second <u>Roseboro</u> notice to Browning on July 8, 2013, instructing Browning to respond to Workman's motion to dismiss. Pursuant to that notice, Browning filed a response in opposition to Workman's motion on July 25, 2013. (Dkt. No. 54).

Browning then filed a motion for preliminary injunction on July 26, 2013, seeking an order requiring the defendants to provide him with a kosher diet, allow him to wear his yarmulke at all times, and allow him to keep his facial hair while this action is pending. (Dkt. No. 56). The defendants responded to Browning's motion on August 30, 2013. (Dkt. Nos. 60 & 61).

On January 28, 2014, the magistrate judge issued an R&R on the pending motions in which he recommended that Yokum and Workman's motions to dismiss be granted due to Browning's failure to establish that either defendant had violated his civil rights. The magistrate judge further recommended that N. Seifert, Taylor, Miller, E. Seifert, Rubenstein, Ryder, and Yahnke's motion to dismiss be denied because the defendants failed to illustrate that they were entitled to immunity from this action. Finally, the magistrate judge recommended that Browning's motion for preliminary injunction be denied because he failed to make a clear showing that

3

he would be irreparably harmed absent receiving preliminary relief. (Dkt. No. 66).

Defendants N. Seifert, Taylor, Miller, E. Seifert, Rubenstein, Ryder, and Yahnke objected to the R&R, contending that the magistrate judge had erroneously concluded that they are not entitled to Eleventh Amendment immunity, and that the defendant had exhausted his administrative remedies. (Dkt. No. 69). Browning did not file objections to the R&R, despite having been warned that his failure to do so would result in waiver of his appellate rights as to any issues not decided in his favor.

Following <u>de novo</u> review of the portions of the R&R to which the defendants have objected, the Court finds that the defendants' objections are without merit.

## II.   FACTUAL BACKGROUND

Browning is an inmate at the Northern Regional Jail and Correctional Facility ("Northern Correctional Facility"). He is also a practicing Orthodox Jew who alleges that, during his time at the Northern Correctional Facility, his right of free exercise of religion has been violated in various ways.

Specifically, Browning alleges that he has been denied a kosher diet, that the prison kitchen refuses to serve him a kosher meal, and instead, requires him to eat a vegetarian or non-pork

4

alternative, neither of which is kosher. He further asserts that the prison commissary does not offer an adequate selection of kosher foods, nor does it label which foods are kosher. Prison officials also allegedly denied Browning's request to receive a shipment of kosher foods from the Aleph Institute. (Dkt. No. 1).

Browning further claims that he is denied the ability to properly worship in prison. He argues that the prison only offers weekly religious services for Messianic, and not Orthodox, Jews. He further alleges that he is not allowed to wear his yarmulke, a traditional Jewish garment, at all times. Finally, he claims that he is denied participation in special holidays, including Rosh Hashanah, Hanukkah, Yom Kippur, and Passover. Id.

As to the specific defendants, Browning alleges that N. Seifert, his former unit manager, received his food-related grievances but did nothing to correct the problem. Similarly, he alleges that Miller, his current unit manager, has received several of his grievances but continues to do nothing to address his issues. Browning contends that Yahnke, the Associate Warden of Programs at the Northern Correctional Facility, and Taylor, Chaplain at the Northern Correctional Facility, have also denied him the items and relief he seeks, including kosher meals, wearing a yarmulke, the ability to worship at a weekly service, the

5

opportunity to celebrate Jewish holy days, and the ability to feast and fast. Additionally, Browning states that Taylor is the official with whom he has the most interaction regarding his complaints.

Browning alleges that E. Seifert, who is the Warden at the Northern Correctional Facility, is aware of all the grievances he has filed, and has "willfully, deliberately, and methodically" denied his requests. He further contends that E. Seifert engages in targeted efforts to hinder his ability to worship in prison.

Browning contends that Rubenstein, who is the Commissioner of the West Virginia Department of Corrections, was responsible for reviewing the denial of his grievances and merely "rubber stamped" the Warden's denials without giving them proper consideration. He further contends that Ryder, the religious coordinator for the West Virginia Department of Corrections, also failed to properly review the denial of his religious-related grievances.

Browning alleges that Yokum, the supervisor for ARAMARK Correctional Catering Services, LLC, operates a food service that does not cater to the kosher dietary needs of Orthodox Jews. Finally, Browning contends that Workman, store supervisor for Keefe Store at the Northern Correctional Facility, operates a store without kosher food offerings.

In sum, Browning alleges that the defendants have deliberately denied his multiple requests and grievances regarding his religious needs. He seeks injunctive and monetary relief to correct these alleged wrongs.

### III.  LEGAL STANDARDS

**A.  Pro Se Pleadings**

Because Browning is acting pro se, the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978).  Even a pro se complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which the plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128 (10th  Cir. 1999). A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

**B.  Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is

7

inappropriate unless it appears beyond a reasonable doubt that the plaintiff cannot prove any set of facts to support his allegations. Revene v. Charles County Comm'rs, 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6).

In order to survive a motion to dismiss, a plaintiff must state a plausible claim for relief that is based on appropriate legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id.

### IV. ANALYSIS

**A. Motion to Dismiss of the Defendants N. Seifert, Taylor, Miller, E. Seifert, Rubenstein, Ryder, and Yahnke**

    **1. Eleventh Amendment Immunity**

These defendants argue that the magistrate judge improperly concluded that they are not entitled to Eleventh Amendment immunity

in this action. (Dkt. No. 69). They contend that, because Browning did not specifically state he was suing them in their individual capacities, the Court must presume he intended to sue them in their official capacities; consequently, they contend the Eleventh Amendment shields them from liability. These objections are without merit.

The Fourth Circuit has rejected the presumption that, if a plaintiff in a § 1983 actions fails to explicitly state that he is suing the defendants in their individual capacities, a Court must assume that he is suing them in their official capacities. See Biggs v. Meadows, 66 F.3d 56, 58 (4th Cir. 1995); Edwards v. Ashley, 70 F.3d 111, 112 (4th Cir. 1995). Rather, when a plaintiff fails to specifically allege capacity, the Fourth Circuit instructs courts to "examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." Biggs, 66 F.3d at 61.

In applying Fourth Circuit precedent to the case at hand, the Court finds that, despite the fact that he described the defendants' official duties, Browning's allegations in his complaint focus on their specific actions relating to him; Browning explains how each individual defendant has been indifferent, and in

some instances openly hostile, to his religious and dietary needs. In doing so, he details his specific interactions with each defendant and their refusal to accommodate his requests.

Browning is also seeking compensatory and punitive damages, which are unavailable in official capacity suits. Id. Furthermore, in response to the defendants' motion to dismiss, Browning has clarified that he intended to sue the defendants in their individual, rather than official, capacities. Finally, although the defendants have not asserted qualified immunity as a defense to Browning's federal constitutional claims, the Court finds that, overall, the factors in this case demonstrate Browning's intent to sue the defendants in their individual capacities.

Because the defendants are not being sued in their official capacities, the Eleventh Amendment does not shield them from liability. Hafer v. Melo, 5033 U.S. 21 (1991)(providing that the Eleventh Amendment does not shield public officials from being sued in their individual capacities). Accordingly, the magistrate judge correctly concluded that the defendants are not protected by the Eleventh Amendment.

**2. Exhaustion of Administrative Remedies**

The defendants also argue that the magistrate judge erroneously concluded that Browning had adequately exhausted his administrative remedies before pursuing this action. (Dkt. No. 69). They contend that none of Browning's claims, as pled, has been administratively exhausted. Id. After carefully reviewing the complaint and the attached grievances, however, the Court finds that Browning has sufficiently plead exhaustion.

Under the Prisoner Litigation Reform Act of 1995 ("PLRA"), as amended, prisoners must exhaust "such administrative remedies as are available" prior to filing suit in federal court challenging prison conditions. 42 U.S.C.A. § 1997e (a). In Jones v. Block, 549 U.S. 199, 127 S.Ct. 910, 166, L.E.2d 798 (2007), the Supreme Court held that failure to exhaust available administrative remedies is an affirmative defense, rather than a jurisdictional requirement, and thus, inmates need not plead exhaustion, and do not bear the burden of proving it. See also, Moore v. Bennett, 517 F.3d 717, 725 (4th Cir. 2008). Rather, only "proper exhaustion" is required, meaning that the inmate must plead facts that establish he followed the prison's administrative rules for filing a grievance, including when and how to file a complaint. Woodford v. Ngo, 548 U.S. 81 (2006).

11

The West Virginia Jail and Correctional Facility Authority's *Handbook of Inmate Rules and Procedures*[2] sets forth the following five step process for grievances:

> 1. If an inmate wishes to use the grievance procedure, jail personnel will provide the inmate with an inmate with an inmate grievance form.
>
> 2. The inmate shall complete the form, addressed to the Administrator; the form, as completed by the inmate, shall be transmitted to the Administrator's office by jail personnel without being read or altered and within a reasonable time, not later than the end of the shift.
>
> 3. The Administrator upon receipt of the grievance may reject the grievance if it appears on its face to have been filed in bad faith.
>
> 4. The Administrator, if the grievance is not rejected pursuant to Paragraph 3, shall provide the inmate an opportunity to be heard before a decision is made on the grievance. The Administrator may assign a staff member to investigate the complaint and report written findings within forty-eight hours and shall inform the inmate of such action.
>
> 5. The Administrator shall provide a written decision with regard to the grievance to the grieving inmate within twenty-four (24) hours of the receipt of the investigation report. Such written decision shall include a statement of the action taken concerning the grievance, the reasons for such action, and procedures for appeal of the decision.

Any inmate who is dissatisfied with the Administrator's decision must file an appeal to the Executive Director within five days of

---

[2] Available at: http://apps.sos.wv.gov/adlaw/csr/readfile.aspx?DocId=18978&Format=PDF

the receipt of the Administrator's decision, and must include a copy of the initial complaint and the Administrator's decision.

Although the burden is not on the plaintiff to plead exhaustion, the § 1983 form complaint that this Court gives to inmates asks if the inmate followed any applicable grievance procedure, and to attach all grievances and responses. Browning attached several grievances and responses to his complaint, (dkt. no. 1), a review of which establishes that he did follow the prison's administrative procedures for filing a grievance; he filed his grievances on the prison-approved form, waited for those grievances to be denied before bringing this action, and then attached a record of those grievances to his complaint. Thus, contrary to the defendants' objection, Browning has sufficiently pleaded exhaustion.

B. **Remaining Motions**

The parties did not object to the magistrate judge's recommendations on either Yokum or Workman's motions to dismiss or Browning's motion for a preliminary injunction. Consequently, finding no clear error, the Court adopts the magistrate judge's recommendations regarding these motions.

### V. CONCLUSION

For the reasons discussed, the Court:

1.  **ADOPTS** the Report and Recommendation in its entirety(dkt. no. 66);

2.  **GRANTS** the motions to dismiss of defendants, Yokum, (dkt. no. 32), and Workman, (dkt. no. 48), and **DISMISSES WITH PREJUDICE** the complaint as to these defendants;

3.  **DENIES** the motion to dismiss of defendants N. Seifert, Taylor, Miller, E. Seifert, Rubenstein, Ryder, and Yahnke (dkt. no. 35) and **ORDERS** those defendants to answer the complaint; and

4.  **DENIES** Browning's motion for preliminary injunction. (Dkt. No. 56).

It is so **ORDERED**.

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of both orders to counsel of record and to the pro se plaintiff, certified mail, return receipt requested.

Dated: March 18, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE