IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JASON BROWNING,

        Plaintiff,

v.               //    CIVIL ACTION NO. 1:13CV23
                       (Judge Keeley)

NICKI SEIFERT, BRANDI MILLER,
GREG YAHNKE, EVELYN SEIFERT,
MICHAEL TAYLOR, C.J. RYDER, and
JAMES RUBENSTEIN

        Defendants.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING
WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

Pending before the Court is the Report and Recommendation
("R&R") (Dkt. No. 121) of Magistrate Judge Robert Trumble regarding
the motion for summary judgment filed by the defendants (Dkt. No.
103), and the motion for subpoenas filed by the plaintiff, Jason
Browning ("Browning")(Dkt. No. 111).  For the reasons that follow,
the Court **ADOPTS** the R&R in its entirety, **GRANTS IN PART** and **DENIES
IN PART** the defendants' motion for summary judgment, and **DISMISSES
WITHOUT PREJUDICE** Browning's motion for subpoenas.

**PROCEDURAL HISTORY**

On February 11, 2013, Browning filed a complaint in this Court
seeking relief pursuant to 42 U.S.C. § 1983 (Dkt. No. 1).  His
complaint alleged that the defendants, Nikki Seifert ("N.
Seifert"), Brandi Miller ("Miller"), Greg Yahnke ("Yahnke"), Evelyn
Seifert ("E. Seifert"), Michael Taylor ("Taylor"), C.J. Ryder

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

("Ryder"), and James Rubenstein ("Rubenstein"), have violated his right to free exercise of religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by 1) denying him a kosher diet, 2) denying him the ability to wear religious apparel, and 3) denying him the right to worship weekly and on special holidays.[1] Id.

At the outset of the case, the defendants filed three (3) separate motions pursuant to Fed. R. Civ. P. 12(b)(6) seeking dismissal of Browning's complaint for failure to state a claim upon which relief may be granted. Yokum filed a Motion to Dismiss on May 2, 2013; N. Seifert, Miller, Yahnke, E. Seifert, Taylor, Ryder, and Rubenstein filed a Motion to Dismiss on May 2, 2013; and Workman filed a Motion to Dismiss on July 2, 2013.

On January 28, 2014, Magistrate Judge James E. Seibert filed an R&R recommending that Yokum and Workman's motions to dismiss be granted based on Browning's failure to establish that either defendant had violated his civil rights. Magistrate Judge Seibert further recommended that the motion to dismiss of N. Seifert, Taylor, Miller, E. Seifert, Rubenstein, Ryder, and Yahnke be denied

---

[1] Browning also named Bob Yokum and Mary Ann Workman in his complaint, but the Court dismissed them on March 18, 2014 (Dkt. No. 71).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

because those defendants had failed to establish that they were entitled to immunity from this action. Finally, Magistrate Judge Seibert recommended that Browning's motion for preliminary injunction be denied because he had failed to make a clear showing that he would be irreparably harmed absent receiving preliminary relief (Dkt. No. 66). The Court adopted Magistrate Judge Seibert's R&R on March 18, 2014, and 1) granted Yokum and Workman's motions to dismiss, 2) denied the remaining defendants' motion to dismiss, and 3) denied Browning's motion for preliminary injunction (Dkt. No. 71).

On March 28, 2014, the remaining defendants answered Browning's complaint (Dkt. No. 74). After discovery concluded, the defendants filed a motion for summary judgment on August 22, 2014, arguing that Browning's RLUIPA claims are moot, and that any burdens imposed upon him were the least restrictive means of furthering a compelling government interest (Dkt. No. 103). On September 5, 2014, Browning filed four separate responses to the defendants' motion (Dkt. Nos. 105-108), and on September 16, 2014, the defendants filed their reply (Dkt. No. 118). On September 5, 2014, Browning also filed a motion for subpoenas (Dkt. No. 111).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

On February 12, 2015, Magistrate Judge Robert W. Trumble issued an R&R in which he recommended that the defendants' motion for summary judgment be granted in part and denied in part, and that Browning's motion for subpoenas be dismissed without prejudice (Dkt. No. 121 at 41).[2]  On February 24, 2015, the defendants objected to portions of the R&R  (Dkt. No. 123).  Browning has not filed any objections, despite having been warned that his failure to do so would result in waiver of his appellate rights as to any issues not decided in his favor.

Following de novo review of the portions of the R&R to which the defendants have objected, the Court finds that the defendants' objections are without merit.[3]

### FACTUAL BACKGROUND

Browning currently is an inmate at the Huttonsville Correctional Center ("HCC").  Previously, he had been incarcerated

---

[2] The case was reassigned to Magistrate Judge Trumble on June 9, 2014 (Dkt. No. 89).

[3] When reviewing a magistrate judge's report and recommendation made pursuant to 28 U.S.C. § 636, the court must review de novo only the portion to which an objection is timely made.  28 U.S.C. § 636(b)(1)(C).  As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous."  See Webb v. Califano, 458 F.Supp. 825 (E.D. Cal. 1979).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

at the Northern Correctional Center ("NCC") from October 2008 until July 2014, following which he was transferred to Mount Olive Correctional Complex ("MOCC"), from where eventually he was designated to HCC. He is a practicing Orthodox Jew who alleges that the defendants have violated his right to freely exercise his religion in various ways.

Specifically, Browning alleges that he has been denied a kosher diet, and that the prison kitchen refuses to serve him a kosher meal, instead requiring him to eat a vegetarian or non-pork alternative, neither of which is kosher. He further asserts that the prison commissary does not offer an adequate selection of kosher foods, nor does it label which foods are kosher. Prison officials also allegedly denied Browning's request to receive a shipment of kosher foods from the Aleph Institute (Dkt. No. 1).

Browning further claims that he has been denied the ability to properly worship in prison. He argues that the prison only offers weekly religious services for Messianic, and not Orthodox, Jews. He further alleges that he is not allowed to wear his yarmulke, a traditional Jewish head gear, at all times. Finally, he claims that he is denied the ability to participate in special holidays, including Rosh Hashanah, Hanukkah, Yom Kippur, and Passover. Id.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

As to the specific defendants, Browning alleges that N. Seifert, his former unit manager, received his food-related grievances but did nothing to correct the problem. Similarly, he alleges that Miller, his current unit manager, has received several of his grievances but continues to do nothing to address his issues. Browning contends that Yahnke, the Associate Warden of Programs at NCC, and Taylor, the Chaplain at NCC, also denied him the items and relief he seeks, including kosher meals, wearing a yarmulke, the ability to worship at a weekly service, the opportunity to celebrate Jewish holy days, and the ability to both feast and fast. Additionally, Browning states that Taylor is the official with whom he has had the most interaction regarding his complaints.

Browning alleges that E. Seifert, who is the Warden at NCC, is aware of all the grievances he has filed, but nevertheless has "willfully, deliberately, and methodically" denied his requests. He further contends that E. Seifert has engaged in targeted efforts to hinder his ability to worship in prison.

Browning contends that Rubenstein, who is the Commissioner of the West Virginia Department of Corrections ("WV DOC"), has been responsible for reviewing the denial of his grievances and merely

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

"rubber stamped" the Warden's denials without giving them proper consideration. He further contends that Ryder, the religious coordinator for the WV DOC, has also failed to properly review the denial of his religious-related grievances.

In sum, Browning alleges that the defendants have wrongfully and deliberately denied his multiple requests and grievances regarding his religious needs, for which he seeks injunctive and monetary relief. The matter is fully briefed and ripe for review.

STANDARD OF REVIEW

## I. <u>Pro Se Pleadings</u>

Because Browning is acting <u>pro se</u>, the Court must liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S.Ct. 594 (1972) (per curiam); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978); <u>Gordon v. Leeke</u>, 574 F.2d 1147 (4th Cir. 1978). Even a <u>pro se</u> complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which the plaintiff could prevail. <u>Barnett v. Hargett</u>, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never

7

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

squarely presented." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274 (4th Cir. 1985).

## II. <u>Motion for Summary Judgment</u>

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. <u>Providence Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. <u>Id.</u> at 248–52.

APPLICABLE LAW

## I.  <u>42 U.S.C. § 1983</u>

Pursuant to 42 U.S.C. § 1983, a plaintiff may bring a claim against a person who, under color of "statute, ordinance, regulation, custom, or usage," deprives his rights under the United States Constitution or other laws. 42 U.S.C. § 1983.  A plaintiff seeking to bring a claim under § 1983 must meet two requirements: (1) that the conduct complained of was committed by a person acting under color of law; and, (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured to him by the Constitution and the laws of the United States.  <u>Wirth v. Surles</u>, 562 F.2d 319, 321 (4th Cir. 1977) (citing <u>Monroe v. Pape</u>, 365 U.S. 167, 81 S.Ct. 473 (1961)).

Generally, a public employee acts under color of law "while acting in his official capacity or while exercising his

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

responsibilities pursuant to state law." Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994) (quoting West v. Atkins, 487 U.S. 42, 50, 108 S.Ct. 2250, 2255 (1988)). "The 'under color of state law' requirement has greater impact where the defendant is a private party not employed by the state." Conner, 43 F.3d at 223.

Individual officials performing discretionary functions are immune from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

As an initial matter, taking the evidence in the light most favorable to the plaintiff, the Court must identify which statutory or constitutional rights were violated. See Saucier v. Katz, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 2156 (2001). The Court then must ask whether those rights were clearly established at the time of the violation. Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808 (2009). For a right to be clearly established, "every 'reasonable official would have understood that what he is doing violates that right.'" West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014) (quoting Ashcroft v. al-Kidd, __ U.S. __, 131 S.Ct. 2074, 2083 (2011)). A clearly established right, however, "need not be

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

one with respect to which all judges on all courts agree." <u>Owens v. Baltimore City State's Attorneys Office</u>, 767 F.3d 379, 395 (4th Cir. 2014)

"Qualified immunity protects public officials from suit when the state of the law is such that they would not have known that their conduct violates statutory or constitutional rights." <u>Owens</u>, 767 F.3d at 395 (citing <u>al-Kidd</u>, 131 S.Ct. at 2083). Qualified immunity does not, however, shield officials who have acted incompetently or knowingly have violated the law. <u>Owens</u>, 767 F.3d at 395 (internal citations omitted).

Summary judgment on qualified immunity grounds is only appropriate if there is no genuine issue of material fact. <u>Krein v. Price</u>, __ Fed. Appx. __, 2014 WL 7210777 at *3 (4th Cir. Dec. 19, 2014). "[I]t is the jury's role, not ours, to decide whose version of facts is correct." <u>Smith v. Ray</u>, No. 12-1503 at 24 (4th Cir. March 18, 2015).

II. **The First Amendment**

The First Amendment to the United States Constitution guarantees the free exercise of religion to prison inmates. <u>Turner v. Safley</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259 (1987) ("Prison walls do not form a barrier separating prison inmates from the

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

protections of the Constitution"). Prisoners must have "reasonable" opportunities to practice their religion. Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081 (1972). A prisoner's First Amendment right nevertheless must be evaluated within the context of his incarceration, and "'courts are ill equipped to deal with the increasingly urgent problems of prison administration.'" Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006) (quoting Procunier v. Martinez, 416 U.S. 396, 405, 94 S.Ct. 1800 (1974)).

The United States Court of Appeals for the Fourth Circuit has recognized that running a prison is a difficult task "'peculiarly within the province of the legislative and executive branches of government,'" and that courts must defer to prison officials who oversee security, discipline, and prison administration. Lovelace, 472 F.3d at 199 (quoting Turner, 482 U.S. at 84-85, 107 S.Ct. 2254).

When deciding a prisoner's First Amendment claim, the Court should find that a prison regulation abridging inmates' constitutional rights is valid if it is reasonably related to legitimate penological interests. Lovelace, 472 F.3d at 199 (citing Turner, 482 U.S. at 89, 107 S.Ct. 2254). The Court must

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

assess four factors when determining whether a prison regulation is

reasonable. These include:

> (1) whether there is a "valid, rational connection"
> between the prison regulation or action and the interest
> asserted by the government, or whether this interest is
> "so remote as to render the policy arbitrary or
> irrational"; (2) whether "alternative means of exercising
> the right ... remain open to prison inmates," an inquiry
> that asks broadly whether inmates were deprived of all
> forms of religious exercise or whether they were able to
> participate in other observances of their faith; (3) what
> impact the desired accommodation would have on security
> staff, inmates, and the allocation of prison resources;
> and (4) whether there exist any "obvious, easy
> alternatives" to the challenged regulation or action,
> which may suggest that it is "not reasonable, but is
> [instead] an exaggerated response to prison concerns.

Lovelace, 472 F.3d at 200 (citing Turner, 482 U.S. at 89-92, 107

S.Ct. 2254) (internal quotation marks and citations omitted)).

## III. RLUIPA

In 2000, Congress enacted RLUIPA, 42 U.S.C. §§ 2000cc *et seq.*,

in response to several Supreme Court decisions "holding that laws

of general applicability that incidentally burden religious conduct

do not offend the First Amendment." Lovelace, 472 F.3d at 185

(citing cases). Of importance in this case, RLUIPA imposes a

higher burden on the government than does the First Amendment.

Under RLUIPA, the government cannot "impose a substantial burden on

the religious exercise of a person residing in or confined to an

13

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

institution . . . even if the burden results from a rule of general applicability . . ." unless it demonstrates that the burden is the least restrictive means of furthering a compelling government interest.  42 U.S.C. § 2000cc-1(a).

The plaintiff bears the burden of persuasion as to whether the challenged law, regulation, or government practice substantially burdens his exercise of religion.  42 U.S.C. § 2000cc-2(b).  "Exercise of religion" is broadly defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  A "substantial" burden is one that puts substantial pressure on the prisoner "to modify his behavior and violate his beliefs." Lovelace, 472 F.3d at 189.

If the plaintiff produces prima facie evidence to support a claim under RLUIPA, the burden of persuasion then shifts to the government to show that the practice or policy is the least restrictive means of furthering a compelling government interest. See id.; 42 U.S.C. § 2000cc-2(b).  When considering the "compelling government interest," courts must consider the context of the claim, and give due deference to "the experience and expertise of prison and jail administrators in establishing necessary

14

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

regulations and procedures to maintain good order, security, and discipline, consistent with considerations of costs and limited resources." <u>Lovelace</u>, 472 F.3d at 189-90.

RLUIPA applies when "the substantial burden is imposed in a program or activity that receives Federal financial assistance . . ." or the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b). The defendants do not dispute that RLUIPA applies to them in this case.

**LEGAL ANALYSIS**

**I.    <u>Eleventh Amendment Immunity</u>**

The defendants' motion for summary judgment attempts to re-argue the issue of Eleventh Amendment immunity previously addressed in the Memorandum Opinion and Order dated March 18, 2014, where the Court concluded that, because Browning's intention was to sue the defendants in their individual capacity, they were not protected by the Eleventh Amendment (Dkt. No. 71 at 10).

The Court finds no compelling reason to revisit its earlier conclusion. <u>See</u> <u>United States v. Aramony</u>, 166 F.3d 655, 661 (4th Cir. 1999). The defendants' citation to Browning's deposition testimony reveals no more than that he is an unsophisticated and

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

unrepresented litigant, whose pleadings, at least at this stage of the proceedings, the Court is obligated to construe liberally. See Estelle, 429 U.S. at 97, 97 S.Ct. at 285. Therefore, the Court **DENIES** the defendants' motion for summary judgment on Eleventh Amendment immunity grounds.

## II. <u>Qualified Immunity</u>

The defendants do not contest that the prison regulations challenged by Browning place a substantial burden on his exercise of religion. Rather, they claim that they have established the existence of a compelling state interest, and that there are no material facts in dispute that their regulations are the narrowest possible means of satisfying the compelling interest.[4]

Browning's claims under § 1983 must be viewed through the lens of qualified immunity. The defendants argue that, as government officials, they are entitled to qualified immunity, as they did not violate any of Browning's rights under either the Constitution or RLUIPA (Dkt. No. 104 at 38).

---

[4] The Court recognizes that Browning makes his claims under both RLUIPA and the First Amendment, but, as the R&R did, considers them only under RLUIPA, which imposes a heavier burden on the government (Dkt. No. 121 at 12).

16

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

Magistrate Judge Trumble had no trouble concluding that Browning's rights under RLUIPA were clearly established at the times relevant to his claims, and that RLUIPA incorporated and exceeded the protection of religious exercise guaranteed under the First Amendment (Dkt. No. 121 at 40). He found that, when viewed in the light most favorable to Browning, the facts establish that the defendants violated Browning's rights under RLUIPA. Id. The defendants objected, stating that they have not violated Browning's rights under RLUIPA, and that, even had they done so, the R&R fails to support a conclusion that they did so intentionally (Dkt. No. 123 at 20-21).

It is undisputed that Browning's rights under RLUIPA were clearly established as of 2008, when he began his incarceration at NCC. See Brown v. Ray, 695 F.Supp.2d 292, 304-05 (W.D Va. 2010) (finding that "it is clearly established law that the government may not impose a substantial burden on an inmate's religious exercise unless it is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling interest" when the petitioner's claims began in June 2008). Specifically, as of 2008, it was clearly established that a prisoner has both a right to a diet consistent with the dictates

17

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

of his religion, and a right to celebrate religious holidays such as Ramadan. <u>Lovelace</u>, 472 F.3d at 199 (citing cases).

The issue remains as to whether a reasonable prison official in the place of the defendants would have known that he was violating Browning's right to freely exercise his religion. At the summary judgment stage, Browning need not conclusively prove that the defendants intentionally violated his clearly established rights in order to avoid judgment on qualified immunity grounds. Rather, summary judgment on qualified immunity is only appropriate if there is no genuine issue of material fact. <u>Krein</u>, 2014 WL 7210777 at *3; <u>Lovelace</u>, 472 F.3d at 198-99.

The Fourth Circuit has categorized this requirement as whether the defendants acted with the requisite intent, and has stated that "simple negligence" is insufficient to meet this fault requirement, but that RLUIPA "at least reaches intentional conduct." <u>Lovelace</u>, 472 F.3d at 194. As in <u>Lovelace</u>, for the reasons that follow, this Court concludes that Browning has presented sufficient evidence of culpability to survive the defendants' motion for summary judgment on his RLUIPA claims. It finds that there are genuine questions of material fact as to whether the defendants acted intentionally in depriving Browning of his free exercise rights. <u>Id.</u> at 195.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

In his R&R, Magistrate Judge Trumble analyzed Browning's claims by dividing them into three broad categories: first, that he was denied a proper religious diet; second, that he was denied the ability to wear religious apparel and possess certain items; and, third, that he was denied the right to worship in weekly services and on holidays (Dkt. No. 121 at 12). The Court will follow this efficient outline in analyzing Browning's numerous claims.

**A.    Religious Diet**

Browning claims that the defendants substantially burdened his exercise of religion by denying him a proper kosher diet that complies with the strictures of Orthodox Judaism. He requests relief as to eight aspects of his religious diet:

1. his kosher diet and proper kosher meals;

2. his kosher food shipped to him from Aramark;

3. permission to work in the kitchen so he can prepare his own food, or the opportunity to have someone trained to properly prepare his food;

4. separate cooking utensils specifically for kosher food preparation;

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

5. permission to order a monthly package from the Aleph Institute;

6. use of a microwave reserved for Jewish inmates only;

7. a directive that the Keefe store list be edited to specify whether food is kosher or not; and,

8. a directive to the Keefe store to sell kosher meats, breads, soups, juice, or soda.

Dkt. No. 9 at 17-18.

### 1.   Requests # 3, 4, 7, and 8

Magistrate Judge Trumble recommended that the Court grant the defendants' motion for summary judgment as to Browning's requests # 3, 4, 7, and 8, finding that they are the least restrictive means to further the compelling government interest in preparing a large number of cost-effective meals for over 1,000 inmates (Dkt. No. 121 at 16-18, 20). Neither Browning nor the defendants have objected to these recommendations, and, finding no clear error, the Court **ADOPTS** them in their entirety.

### 2.   Request # 1

As to request # 1, in which Browning asserts that he was denied a kosher diet and proper kosher meals, Magistrate Judge Trumble recommended granting the defendants' motion for summary

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING
WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

judgment as to Browning's claim for money damages stemming from his

kosher diet at NCC before he was transferred to MOCC;[5] however, he

recommended denying the same request as to Browning's diet at MOCC

and HCC.  <u>Id.</u> at 15.  The defendants have objected to the latter

part of this recommendation, arguing that Browning already receives

a kosher diet in accordance with Policy Directive 511.00.

Policy Directive 511.00 provides for one religious-specific

diet for all inmates.  <u>Id.</u> at 13.  Magistrate Judge Trumble noted

that, if Policy Directive 511.00 were followed, food prepared at WV

DOC facilities would be kosher, but, absent proof that the policy

has been implemented, summary judgment is inappropriate.  <u>Id.</u> at

15.

The defendants have objected to this conclusion, arguing that

the affidavit of Clarence J. Rider ("Rider"), included in their

summary judgment motion, establishes that inmates at MOCC do

receive one religious-specific diet, as per Policy Directive 511.00

(Dkt. No. 123 at 2; Dkt. No. 104-1 at 1).  At the time the

defendants filed their motion for summary judgment, Browning had

not yet been incarcerated at HCC, thereby obviating any need for

---

[5] The defendants have not objected to Magistrate Judge
Trumble's recommendation as to Browning's kosher diet at NCC.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

evidence as to his diet there. <u>Id.</u> at 3. Nonetheless, the defendants provided a second affidavit of Rider, in which he stated that, in accordance with Policy Directive 511.00, inmates at HCC also receive one religious-specific diet. <u>Id.</u>; Dkt. No. 123-1 at 1. The defendants contend that, because Browning was receiving a kosher diet at both MOCC and HCC, there has been no substantial burden on his religious beliefs. <u>Id.</u> at 4.

The defendants argue that no genuine dispute exists as to whether Browning received a kosher diet while at MOCC, or continues to do so now at HCC. They have attached to their motion Rider's first affidavit as support for their argument that the diet provided to Browning at MOCC accords with Policy Directive 511.00, and satisfies kosher requirements (Dkt. No. 104 at 3).

In his response to the defendants' summary judgment motion, however, Browning attaches his grievance, dated July 30, 2014, requesting a kosher diet while at MOCC, and threatening to stop eating if he doesn't receive one (Dkt. No. 108-1). Browning states that he had received a vegetarian tray for the eight years prior to his intake at MOCC. <u>Id.</u> This grievance supports Magistrate Judge Trumble's conclusion that Browning received a kosher diet at NCC, but not at MOCC or HCC. This creates a genuine dispute as to the

22

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

material facts surrounding whether the defendants have actually implemented Policy Directive 511.00 at those facilities. Therefore, the Court **ADOPTS** the recommendation in the R&R that Browning's request for a kosher diet at MOCC and HCC survives summary judgment.[6]

### 3.    Requests # 2 and 5

Browning seeks to have Aramark, a state vendor, ship him kosher food, and requests that he be permitted to order a monthly package from the Aleph Institute, a private vendor (Dkt. No. 9 at 17-18).  According to the defendants, however, Aramark is not the current food service provider at NCC, and, at any rate, such a request would be cost-prohibitive and difficult from a logistical standpoint because they would have to provide any inmate who requests a specific religious diet with the same treatment (Dkt. No. 104 at 21).  They also contend that Browning was provided with opportunities to order a monthly food package from the Aleph Institute, but declined to do so because he did not want to pay for it (Dkt. No. 104-1; Dkt. No. 104 at 22).

--------

[6] The Court also agrees that Browning's claim for injunctive relief is not moot, despite the fact that he was transferred to HCC, because he could be transferred back to MOCC or NCC at any time (Dkt. No. 121 at 15).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

Magistrate Judge Trumble recommended denying summary judgment as to Requests # 2 and 5 because he found inconsistent responses in the record (Dkt. No. 121 at 19). Specifically, a memorandum from defendant Yanhke, dated July 31, 2012, informed Browning that his request to purchase food from the Aleph Institute was denied, and that Aramark "is willing to work with you to order kosher meals when the general population inmates order 'Fresh Favorites' meals." (Dkt. No. 1-7 at 2). The defendants explain that Browning's request was denied because he turned in the order form for Aramark too late, and point to the dates of the order deadline (July 15), and on Browning's grievance (July 18) (Dkt. No. 123 at 5; Dkt. No. 1-7 at 3, 6).

The Court is unpersuaded by the defendants' objection. Although Browning's grievance may be dated July 18, 2012, three days after the order deadline in the blank order form provided by NCC, it is unclear when he actually tried to place his order. Furthermore, the defendants' explanation is internally inconsistent. Yanhke denied Browning's request to order food from the Aleph Institute, not Aramark, but the defendants contend that Browning's request to order through Aramark was denied by Yahnke because it was submitted too late (Dkt. No. 123 at 4-5). Although

24

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

Browning may have placed an order through Aramark too late, as the defendants contend, it is equally plausible that he placed his order on time and it was denied, or, as he contends in his grievance, that he was not provided with a kosher option from Aramark (Dkt. No. 1-7 at 4). If the latter is the case, the defendants' explanation that it would be cost-prohibitive and impractical to allow Jewish inmates to order kosher food is unavailing, given the fact that non-Jewish inmates are permitted to order from a multitude of options on the 'Fresh Favorites' menu from Aramark. Mindful of its obligation to view all the facts in the light most favorable to the non-movant at the summary judgment stage, the Court finds that there is a genuine dispute of material fact as to whether Browning had the ability to purchase kosher meals from Aramark. <u>Providence Square Assocs.</u>, 211 F.3d at 850.

As to Browning's order from the Aleph Institute, the defendants argue that he has always possessed the ability to order food from the Aleph Institute, but that he had previously declined to do so because he does not want to pay for it (Dkt. No. 123 at 5). In support, they offer the affidavit of defendant Taylor, who testified that he set up an order for Browning with the Aleph Institute, but that Browning "chose to decline the order and he did

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

not wish to pay for the same." (Dkt. No. 104-1 at 4). Magistrate Judge Trumble found this response puzzling, given Yanhke's memorandum "denying" Browning's request to order food from the Aleph Institute (Dkt. No. 121 at 19).[7] Finding a conflict in the evidence, the Court concludes that there is a genuine dispute as to whether Browning was permitted to order kosher food through either a private (Aleph Institute) or state (Aramark) vendor that is material to the outcome of Browning's claim, and **ADOPTS** the recommendation in the R&R.

    **4.    Request # 6**

    Finally, Browning seeks a separate microwave oven for Jewish inmates (Dkt. No. 9 at 17-18). The defendants contend that this request is financially unreasonable because it would "require the WV DOC to install religion specific microwaves in every cell pod in every institution in the state." (Dkt. No. 104 at 4). Magistrate Judge Trumble found that the defendants' response was inconsistent with Yanhke's memorandum (Dkt. No. 121 at 19).[8] The defendants

---

    [7] Again, the defendants' explanation that Browning missed the order deadline is unavailing, as the order deadline was for Aramark, and not the Aleph Institute (Dkt. No. 1-7).

    [8] Although Yahnke's memorandum did not mention a microwave oven, an attachment to that exhibit contains correspondence about

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

object to Magistrate Judge Trumble's conclusion, arguing that he misunderstood Browning's request, and reiterating that a requirement for religion specific microwaves would be financially unreasonable (Dkt. No. 123 at 6-7).

Browning wants a separate microwave oven, reserved specifically for use by Jewish or Muslim inmates, and which will be kept in the unit manager's office so that it may remain free from contamination (Dkt. No. 123 at 6). In his deposition, Browning explains that using a microwave oven to heat non-kosher food would contaminate the microwave, thus requiring a replacement. <u>Id.</u> Without apprising the Court of the potential cost, the defendants contend that acceding to Browning's request would require them to install a similar microwave in every cell pod in every institution in the state, and that such a request would be financially unreasonable (Dkt. No. 123 at 7).

Although the defendants correctly assert that <u>Lovelace</u> identifies cost as a compelling government interest, they have failed to provide the Court with any evidence as to (1) what the actual cost would be, or (2) the existence of any less restrictive alternatives.

───────────────

kosher meals in microwavable trays (Dkt. No. 1-7 at 5).

27

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

While the Court will afford "due deference" to prison officials' expertise and experience, this situation, like that in <u>Lovelace</u>, is one where prison officials have failed to "explain in a responsive fashion" why their policy is justified. <u>Id.</u> at 193. In short, the Court cannot accept the vague explanation of a separate microwave oven being "cost-prohibitive" without any further explanation or evidentiary support. The defendants are not entitled to summary judgment because they have failed to establish that the burden they are imposing on Browning is the "least restrictive means of furthering a compelling government interest." <u>Lovelace</u>, 472 F.3d at 189. The Court therefore **ADOPTS** the recommendation in the R&R.

**B.   <u>Religious Apparel and Items</u>**

Browning claims that he has been denied the right to wear religious apparel, to possess religious items, and to follow grooming practices proscribed by his religion. He seeks the following relief:

1. Permission to wear his yarmulke at all times;

2. Herbs, oils, and incense for services only;

3. Two prayer shawls;

28

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

4. Permission to wear religious clothing such as a tallit, tzizit, and yarmulke while in administrative or disciplinary segregation;

5. Candles and a menorah for Hanukkah;

6. Jewish holiday cards for each holiday that Keefe does not sell;

7. A Jewish newspaper such as "The Jerusalem Press";

8. Proper utensils used in worship services;

9. A new copy of the Torah in Hebrew;

10. A tallit bag to keep his religious apparel and items;

11. A sukkoth booth each year to celebrate and recite blessings over plant species;

12. A locker box for Jewish material at the Chaplain's office;

13. A depilatory; and,

14. To refrain from shaving or cutting his hair, beard, or earlocks.

Dkt. No. 9 at 17-18.

Magistrate Judge Trumble recommended granting the defendants' motion for summary judgment as to requests # 2, 3, 5, 6, 7, 8, 9, 10, and 13 (Dkt. No. 121 at 21-22). Neither Browning nor the defendants have objected to that recommendation, and the Court

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

discerns no clear error.  Therefore, it **ADOPTS** the recommendation in the R&R.

### 1. Requests # 1 and 4

Browning seeks to wear his yarmulke at all times, and to wear other religious clothing, including a tallit and tzizit, while in administrative or disciplinary segregation.  It is uncontested that Browning is permitted to wear his yarmulke in his cell and during religious services (Dkt. No. 104 at 24).  Policy Directive 510.00(L)(1), which governs when an inmate may wear religious apparel, provides that inmates may wear religious items during religious services, ceremonies, and meetings (Dkt. No. 104-1 at 29).  If an inmate receives permission from the Warden, he may also wear religious items throughout the institution, "consistent with considerations of security, safety or orderly operation."  Id.

The defendants contend that Browning's request to wear his yarmulke at all times is unnecessary, because he already does so (Dkt. No. 104 at 25).  In his deposition, however, Browning testified that, although he wears his yarmulke at all times underneath his ball cap, he is not permitted to do so (Dkt. No. 104-1 at 9) ("I'm not supposed to have [the yarmulke] on out of my cell.  But, you know, since I've been in this prison, I've never

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

took [sic] it off."). Browning has further alleged that he was punished by being placed in segregation for wearing his yarmulke, and attached a form indicating that the Administrative Segregation Committee had reviewed his status on February 28, 2013, and recommended that he remain in the punitive segregation population (Dkt. No. 105-1 at 8). As a result, Magistrate Judge Trumble concluded that Browning had put forth sufficient evidence that his right to exercise his religious beliefs had been substantially burdened to avoid summary judgment (Dkt. No. 121 at 23).

The defendants do not contest that Browning's right to exercise his beliefs was burdened at NCC; rather, they contend that, given NCC's designation as a Special Management facility, with a higher percentage of inmates requiring special monitoring or preventative measures, Policy Directive 510.00 is the least restrictive means of furthering the compelling government interest in maintaining a safe and secure prison environment (Dkt. No. 123 at 9).

Magistrate Judge Trumble recommended denying summary judgment as to Requests # 1 and 4 because the defendants had not provided any support for their conclusion that permitting Browning to wear his yarmulke throughout the facility, or his tzizit and tallit in

31

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

segregation, would lead to religious disagreement, gang-related activity, and violence (Dkt. No. 121 at 24). The defendants have objected to that conclusion, pointing to the safety concerns that would exist should Browning be permitted to wear his yarmulke throughout the facility.

On its face, Policy Directive 510.00 does not strictly preclude Browning from ever wearing a yarmulke throughout the institution. It simply requires, "consistent with considerations of security, safety or orderly operation," that he obtain permission from the Warden to do so (Dkt. No. 104-1 at 29). Browning did submit a grievance seeking permission to wear his yarmulke at all times, which prompted a response from the Central Office Grievance Review on June 11, 2012, remanding Browning's grievance for "a more detailed response explaining how the wearing of [the yarmulke] by the inmate will disturb security or institutional order." (Dkt. No. 1-5 at 7).

Yahnke responded, three days later, by denying Browning's grievance (Dkt. No. 123-1 at 4). That denial discussed NCC's designation as a Special Management facility under Policy Directive 326.03. It stated that, due to that designation, the Warden has the power under Policy Directive 400.03 to remove items from or add

32

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

items to the approved property list.  That property list indicates the items necessary for prison life that do not endanger security (Dkt. No. 123-1 at 3).  Finally, the denial stated that NCC wishes its inmates to dress in a manner that defines them as individuals, but does not affiliate them with a group, either religious or gang-related.  <u>Id.</u> at 4.  The defendants argue that this response establishes that legitimate safety concerns at NCC, a Special Management facility, require a religious-neutral dress code (Dkt. No. 123 at 10).

It is undisputed that the defendants have placed a substantial burden on Browning's exercise of his religious beliefs as an Orthodox Jew by prohibiting him from wearing a yarmulke at all times (Dkt. No. 121 at 26; Dkt. No. 123 at 10).  Their suggestion that Browning's request is unnecessary because he wears his yarmulke anyway, in derogation of the rules, is unpersuasive; it is undisputed that, at least some of the time, Browning is not permitted to wear his yarmulke (Dkt. No. 104 at 24).  Indeed, the evidence suggests that a reasonable inference may be drawn that he was punished for doing so (Dkt. No. 105-1 at 8).

While acknowledging that NCC has a compelling interest in maintaining a safe, secure environment, the Court cannot find from

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

the evidence of record that the institution's current policy is the least restrictive means of furthering that interest.  There is no dispute about whether Policy Directive 510.00, on its face, permits inmates to wear religious items with the Warden's permission, but the defendants appear to have established a strict rule at NCC, based on its status as a Special Management Facility, that such exceptions are prohibited across the board.  They therefore have failed to establish that the current policy of prohibiting inmates at NCC from wearing religious items throughout the facility is the least restrictive means of furthering NCC's interest in safety.

The same analysis applies to Browning's request to wear his yarmulke, tallit, and tzizit while in administrative or disciplinary segregation.  According to defendant Miller, NCC has a blanket policy prohibiting inmates from wearing religious clothing while in segregation (Dkt. No. 104-1 at 16; Dkt. No. 123 at 11).  This is consistent with Policy Directive 400.03, which states that inmates in segregation are subject to "additional property limits due to the security and program considerations inherent in the operation of such units." (Dkt. No. 123-1 at 5).

Magistrate Judge Trumble concluded that the defendants' policy was unsupported by any governmental interest (Dkt. No. 121 at 27,

34

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

n.1).  He noted that Policy Directive 326.00 contains special provisions governing situations where a segregated inmate is deprived of items he usually can possess in his cell, and concluded that, because Browning could wear his yarmulke, tzizit, and tallit in his cell, he should be able to do so in segregation.  Id. at 28.

The defendants have objected to this conclusion.  While acknowledging that this restriction burdened Browning's right to exercise his religion, they maintain that their compelling interests in security and the orderly operation of segregation units are paramount and therefore trump Browning's right to exercise his religion in that way (Dkt. No. 123 at 12).

After carefully reviewing the evidence, the Court agrees that there are material issues of fact in dispute concerning whether the defendants' current policy of prohibiting segregated inmates from wearing any religious apparel is the least restrictive means of furthering its interest in safety and security, and **ADOPTS** the recommendation in the R&R.

### 2. Request # 11

Browning requests a sukkoth or sukkah booth, a temporary shelter covered in a material that will not blow away in the wind, in which to pray during the seven-day religious holiday of Sukkot.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

During Sukkot, Jews pray over four plant species: etrog (a citrus fruit native to Israel), lulav (a palm branch), hadas (a myrtle tree branch), and arava (a willow branch) (Dkt. No. 121 at 28). The defendants contend that Browning's request for a sukkoth booth "represents a safety issue," as it "is clearly a safety risk" and "could undoubtedly cause conflicts amongst inmates and promote the exchange of contraband." (Dkt. No. 104 at 26).

On June 11, 2012, the WV DOC Office of the Commissioner remanded Browning's grievance regarding his request for a sukkoth booth (Dkt. No. 1-6 at 9). On remand, the Central Office explained the security risks inherent in allowing Browning to have a sukkoth booth, including disruption of the prison yard, importation of items that could be used as contraband, and opportunities for assault. Id. The Central Office also noted, however, that allowing Browning "to possess a lulov (sic) and etrog may be a less restrictive opportunity. Also, the facility needs to identify any specific security concerns created by the Sukkah." Id.

According to the defendants, on June 14, 2012, Yahnke wrote a memorandum in which he identified concerns that a sukkah would 1) disrupt the prison yard, 2) involve the importation of items that could be used as contraband, and 3) require heightened security to

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

ensure that assaults did not occur (Dkt. No. 123 at 13). Yahnke allegedly offered Browning a less restrictive alternative, in the form of a lulov (sic) and an etrog, which Browning accepted. <u>Id.</u> Although the defendants state that Yahnke's memorandum was attached to their motion for summary judgment as Exhibit C, Exhibit C is actually a transcript from Browning's deposition (Dkt. No. 104-1 at C).[9] Unfortunately, the Court has been unable to locate any document described as Yahnke's June 14, 2012, memorandum regarding the sukkah.

Magistrate Judge Trumble recommended denying summary judgment as to Request # 11 because the defendants had failed to identify specific security concerns created by the sukkoth booth or any available less restrictive alternatives and why they are unacceptable (Dkt. No. 121 at 29). In their objections, they point to defendant Miller's affidavit reiterating the safety issue, and referencing Yahnke's June 14, 2012, memorandum. The Court has duly considered Miller's affidavit, but again notes that it has not been able to review a memorandum from Yahnke. Absent specific evidence

---

[9] Similarly, the Court could not locate Yahnke's memorandum regarding the sukkah in the defendants' attachments to their objections. Although Yahnke's June 14, 2012, memorandum regarding Browning's yarmulke was attached, it did not address the sukkah (Dkt. No. 123-1 at 3).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

in the record, it is bound to conclude that the defendants have failed to meet their burden of establishing that there is no genuine dispute about a material fact as to whether NCC identified specific security concerns or considered any less restrictive alternatives before it denied Browning's request.  It therefore **ADOPTS** the recommendation in the R&R.

### 3. Request # 12

Browning requests that a separate locker box be kept in the Chaplain's office where Orthodox Jews may store their religious apparel and items.  He explains that Orthodox Jews share the current locker box with Wicca, Odeinist/Assatru, Native American, and Messianic Jewish inmates, and that some of those other inmates have defaced the Orthodox Jewish items in the box, rendering them non-kosher (Dkt. No. 104-1 at 12).  Furthermore, he alleges that every other religion has its own locker box, donated by the prison shop, and that there is plenty of room in the Chaplain's office for additional boxes.  Id.

The defendants contend that "to provide a locker box for every religion represented at NCC would require numerous additional lockers," and that sufficient space is unavailable (Dkt. No. 104 at 8).  Additionally, "more lockers would mean an additional cost,"

38

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

and such cost is unnecessary as all religious items for all religions fit within the existing seven boxes.  Id.

Magistrate Judge Trumble found that Browning's ability to practice his religion had been substantially burdened by other inmates defacing his religious materials, and that the defendants had not established the existence of a less restrictive alternative to further their interest in conserving funds and space (Dkt. No. 121 at 31).  In their objections to this recommendation, the defendants argue that the actions of other inmates were not conducted by the State of West Virginia (Dkt. No. 123 at 14). "Rather, if Plaintiff chooses not to view a book because the same has been defaced, this is a decision by Plaintiff premised upon an action of another inmate." Id.  According to the defendants, even if they are burdening Browning's exercise of religion, considerations of cost and limited resources trump his rights.  Id. at 15.

Although prison officials cannot be held responsible for every action of an inmate, it would contradict the purpose of RLUIPA to absolve them of responsibility when they are aware of actions such as those alleged by Browning and fail to respond.  RLUIPA provides that a "substantial burden" on a prisoner's exercise of religion

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

could occur when the government, through act <u>or omission</u>, pressures an inmate to modify his behavior and violate his beliefs.  <u>See</u> <u>Lovelace</u>, 472 F.3d at 187.

The Court cannot judge the significance of the inmate's belief, thus making impossible any consideration of the defendants' argument that it is up to Browning not to view the books after they have been defaced.  <u>Id.</u> at 187, n. 2.  The Court therefore concludes that material facts are in dispute as to whether the defendants have placed a substantial burden on Browning's right to practice his religion because they were aware that Orthodox Jewish books were being defaced by other inmates, but failed to remedy the situation.

The parties have provided conflicting evidence as to whether space and funds are available to provide other religions with their own boxes.  According to Browning, space is available for additional boxes, and the prison shop donates the boxes (Dkt. No. 104-1 at 12).  According to defendant Taylor, however, space is not available for additional boxes, and providing those boxes would require the NCC to incur additional cost.  <u>Id.</u> at 5.

From the evidence of record, the Court is unaware whether the defendants have considered any less restrictive alternatives, such

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

as monitoring inmates who access the boxes already located in the Chaplain's office to ensure that they do not deface other religions' items or books. Therefore, it **ADOPTS** the recommendation in Magistrate Judge Trumble's R&R.

### 4. Request # 14

Browning requests that he be permitted to refrain from shaving or cutting his hair, beard, or earlocks. The defendants contend that shaving requirements are necessary to maintain safety at NCC because long hair and beards could be disruptive, conceal contraband, and lead to confrontations among inmates (Dkt. No. 104 at 33).

According to Policy Directive 334.01, hair "will not exceed the top of the collar or ears, be no more than 3 inches on top, and be neat and clean." (Dkt. No. 104 at 33-34). Pursuant to that same policy, "[f]acial hair will not be permitted. Medical and religious issues will be addressed on a case by case basis." Id. at 34. Due to NCC's status as a Special Management facility, "the only exceptions made regarding hair length and facial hair pertain to medical needs. As such, no inmate housed at NCC may deviate from WV DOC Policy Directive 334.01 for a religious reason." Id.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

In <u>Scible v. Miller</u>, 2007 WL 858618 at *1 (N.D.W. Va. Mar. 19, 2007), this Court addressed a similar claim from a Rastafarian inmate requesting an exemption from the WV DOC grooming policy. Relying upon the Fourth Circuit's decision in <u>Hines v. South Carolina Dept. Of Corr.</u>, 148 F.3d 353, 357-58 (4th Cir. 1998), it held that the WV DOC's policy was constitutional. <u>Id.</u> at *7.

Following the decision in <u>Scible</u>, however, the Supreme Court of the United States recently decided <u>Holt v. Hobbs</u>, __ U.S. __, 135 S.Ct. 853, 859 (2015), which holds that the Arkansas Department of Correction's denial of a prisoner's proposed religious accommodation allowing him to grow a half-inch beard violated RLUIPA. In <u>Holt</u>, a Muslim inmate objected to shaving his beard, and, although he believed that his faith required him to not trim his beard at all, proposed a compromise whereby he would grow a half-inch beard. <u>Id.</u> at 861. Prison officials denied his request, stressing that the policy only allows exceptions for inmates with medical needs, not for those who seek exceptions for religious reasons. <u>Id.</u> at 860. The Supreme Court agreed that the Department's policy burdened the inmate's exercise of religion, and found that it could not establish "that forbidding very short beards is the least restrictive means of preventing the concealment

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING
WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

of contraband," or of preventing inmates from altering their
identities. _Id._ at 862, 864-65.

The defendants object to Magistrate Judge Trumble's reliance
on _Holt_, insisting that the Court's decision in _Scible_ is
controlling because Browning, like the plaintiff in _Scible_, "is
asking to never cut his beard, hair, and earlocks." (Dkt. No. 123
at 16). The Court is unpersuaded by this argument.

As the Supreme Court clearly stated in _Holt_, once the burden
shifts to the defendants, they must show that their policy is in
furtherance of a compelling government interest, and is the least
restrictive means of furthering that interest. _Holt_, 135 S.Ct. at
863. Undoubtedly, the defendants have a compelling interest in
avoiding concealment of weapons, religious disagreement, or gang-
related activity. _See id._ Yet, they also are obliged to "prove
that denying the exemption is the least restrictive means of
furthering a compelling government interest." _Id._ at 864.

Here, as in _Holt_, the defendants have failed to meet that
burden. In point of fact, that inmates at NCC are provided
exemptions for medical reasons, but not religious ones, suggests
that such an exemption may be feasible. Furthermore, the
defendants have failed to point to any proposed accommodations they

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

have offered to Browning, which leads to an inference that they have failed to explore any less restrictive alternatives. Although the Court must give due deference to prison officials' expertise in running a prison, "that respect does not justify the abdication of the responsibility, conferred by Congress, to apply RLUIPA's rigorous standard." Id. Therefore, it **ADOPTS** the recommendation in the R&R.

   **C.   Right to Worship**

Finally, Browning claims that he has been denied the right to worship both weekly and also on special occasions. He seeks the following relief:

   1. Proper weekly worship services for Orthodox Jewish inmates only, rather than a blending of Orthodox Jewish and Messianic Jewish inmates;

   2. To observe Sabbath each Friday with matzah crackers;

   3. To observe havdalah each Saturday;

   4. To observe Shacharis with tefflin each morning;

   5. To observe Mincha each afternoon;

   6. To observe Maariv each evening; and,

   7. To observe all Jewish holidays, including Passover, Rosh Hashanah, Yom Kippur, Simchat, and Torratt Shermini Atzeret.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

(Dkt. No. 1 at 11-12).

Magistrate Judge Trumble recommended granting the defendants' motion for summary judgment as to Browning's requests # 1, 2, 3, 4, 5, and 6 (Dkt. No. 121 at 34-6).  Neither Browning nor the defendants have objected to these recommendations, and, finding no clear error, the Court **ADOPTS** the recommendations.

### 1.  Request # 7

Browning seeks to observe all Jewish holidays, including Passover, Yom Kippur, Simchat, Rosh Hashanah, and Torratt Shermini Atzeret (Dkt. No. 1 at 11-12).  In addressing his claims, the defendants have broken this into a religious worship component, and a fasting or feasting component (Dkt. No. 104 at 30).

As to the religious worship component, the defendants argue that a volunteer rabbi provides services as often as possible, but that it is difficult for the rabbi to come to NCC for all Jewish holidays because there are so many.  Id.  Policy Directive 510.00 provides that chaplains should endeavor to facilitate the observance of important religious holidays "in accordance with specific requirements of a faith group (i.e. fasting, worship, diet, work, etc.)."  (Dkt. No. 104-1 at 27).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

As to the feasting component, Policy Directive 511.00(F) provides that members of a specific faith group may request one special meal observance per year (Dkt. No. 104 at 11; Dkt. No. 104-1 at 18). All members of the specific faith group, in this case, Judaism, must agree on one holiday per year upon which to feast, and must either pay for the feast or find a donor to absorb the cost (Dkt. No. 104 at 11).

According to the defendants, Browning and the other Jewish inmate at NCC could not agree on their chosen holiday. Browning wished to celebrate Rosh Hashanah, while the other inmate selected Passover. Id. The defendants arranged for the Aleph Institute to send Browning food to celebrate Passover nonetheless, however, he refused to pay for it or to find a donor to pay for it. Id.

Magistrate Judge Trumble found that the defendants' restriction limiting each inmate to celebrate one holiday was a substantial burden on Browning's religious beliefs, for which they had failed to provide a compelling governmental interest justifying the limitation (Dkt. No. 121 at 38). In their objection to that conclusion, the defendants note that the compelling government interest is a uniform policy that applies to all inmates, as well as cost concerns (Dkt. No. 123 at 17). They point out that

46

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

Browning may still celebrate all Jewish holidays as to the religious worship component of those holidays, but is limited to only one feast.  <u>Id.</u>

At the outset, the Court must reject the deceptively clear distinction the defendants draw with their categorization of each holiday in terms of either religious worship, or fasting or feasting.  As Magistrate Judge Trumble points out in his R&R, feasting or fasting is an integral part of many Jewish holidays (Dkt. No. 121 at 37) (listing the feasts of Israel).  Therefore, it would be disingenuous for the Court to conclude that Browning is "free" to celebrate all Jewish holidays, except for the meal component.

Based on all of this, the Court concludes that the defendants have failed to establish that limiting each inmate to one holiday is the least restrictive means to achieve their compelling interest in avoiding favoritism or excessive cost.  Given that inmates either must pay for a feast or convince a donor to pay for it, the defendants' assertion that celebrating more than one holiday would lead to excessive costs is less than convincing.  Furthermore, they have failed to establish that no less restrictive alternative is

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

available.  Therefore, the Court **ADOPTS** the recommendation in the R&R.

### D.  Conclusion

For the reasons discussed, the Court concludes that the defendants are entitled to partial summary judgment on a number of the issues of raised by Browning regarding whether his rights under RLUIPA and the First Amendment have been violated.  It therefore **GRANTS** the defendants' motion for summary judgment on qualified immunity grounds as to the following claims:

- To work in the kitchen or have someone in the kitchen trained to properly prepare kosher food;

- For separate cooking utensils;

- For the Keefe store to specify kosher from non-kosher foods;

- For the Keefe store to sell more kosher food;

- For kosher diet and meals as to Browning's time at NCC;

- For herbs, oil, and incense;

- For two prayer shawls;

- For candles and a menorah for Hanukkah;

- For Keefe to sell Jewish holiday cards;

48

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

- For a Jewish newspaper;

- For proper utensils used in worship services;

- For a new copy of the Torah in Hebrew;

- For a Tallit bag to keep religious items;

- For a depilatory;

- To have weekly worship services for Orthodox Jewish inmates only;

- To observe Sabbath each Friday with matzah crackers;

- To observe havdalah each Saturday;

- To observe Shacharis with tefflin each morning;

- To observe Mincha each afternoon; and,

- To observe Maariv each evening.

Browning, however, has carried his burden of establishing that genuine issues of material fact are in dispute as to whether the defendants acted intentionally regarding some of his claims. Lovelace, 472 F.3d at 194-95. The defendants' assertion that Browning has made only generalized, unsubstantiated allegations disregards the careful analysis in the R&R detailing the multitude of grievances, policies, and memoranda supporting Browning's claims. For all of the reasons discussed, the Court **DENIES** the

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

defendants' motion for summary judgment on qualified immunity grounds as to the following issues:

- For kosher food shipped from Aramark;

- For permission to order a monthly package from the Aleph Institute;

- For a separate microwave for Jewish inmates;

- For kosher meals and diet as it relates to Browning's stay at MOCC and HCC;

- For permission to wear a yarmulke at all times;

- For permission to wear religious clothing, including a tallit, tzizit, and yarmulke, during administrative or disciplinary segregation;

- For a sukkoth booth;

- For a locker box exclusively for Orthodox Jewish inmates;

- For permission to refrain from shaving or cutting hair; and,

- For permission to celebrate all Jewish holidays, including Passover, Rosh Hashanah, Yom Kippur, Simchat, and Torratt Shermini Atzeret.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

## III. <u>Browning's Sixth and Eighth Amendment Claims</u>

In addition to his civil rights claims, Browning asserts that the defendants violated his Sixth and Eighth Amendment rights. He has failed to provide any facts in support of those claims, however (Dkt. No. 9 at 9). His complaint alleges that he has been "denied access to my Jewish beliefs and heritage at every level, only to be subjected to have to watch other religions and their adherents thrive. This is [sic] itself also constitutes a violation of my Sixth Amendment 'due process' and Eight [sic] Amendment 'cruel and unusual punishment' as well as 'deliberate indifferences [sic].'" <u>Id.</u> He repeats that the defendants' denial of his request to wear his yarmulke constituted a "constant violation" of his First, Sixth, and Eighth Amendment rights, without providing any further detail. <u>Id.</u>

In his deposition, Browning was unable to explain how his claims implicated rights protected by the Sixth or Eighth Amendments (Dkt. No. 104 at 13). After due consideration, the Court **ADOPTS** the recommendation in the R&R that Browning has either abandoned or otherwise failed to provide any facts to support these claims (Dkt. No. 121 at 4).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 121], GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 103], AND DISMISSING
WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUBPOENAS [DKT. NO. 111]**

## IV. <u>Browning's Motion for Subpoenas</u>

On September 5, 2014, Browning filed a sworn statement and motion for subpoenas (Dkt. No. 111). In it, Browning states that he formerly had a declaration from several prison employees and inmates, but that his papers disappeared when he was transferred to the MOCC. <u>Id.</u> at 2. He asks the Court to allow him to subpoena witnesses to verify his statement. <u>Id.</u> Magistrate Judge Trumble recommended denying Browning's motion without prejudice, a conclusion to which Browning did not object (Dkt. No. 121 at 42). The Court finds no clear error, and **ADOPTS** the recommendation to deny Browning's motion without prejudice (Dkt. No. 111).

### SUMMARY OF THE COURT'S RULINGS

For the reasons discussed, the Court:

1.    **ADOPTS** the Report and Recommendation in its entirety (Dkt. No. 121);

2.    **DISMISSES WITHOUT PREJUDICE** Browning's motion for subpoenas (Dkt. No. 111);

3.    **DENIES** the defendants' motion for summary judgment (Dkt. No. 103) predicated on Eleventh Amendment immunity;

**MEMORANDUM OPINION AND ORDER ADOPTING**
**THE REPORT AND RECOMMENDATION [DKT. NO. 66]**

 4.    **GRANTS IN PART AND DENIES IN PART** the defendants' motion

       for summary judgment based on qualified immunity as to

       Browning's RLUIPA claims (Dkt. No. 103); and,


 5.    **GRANTS** the defendants' motion for summary judgment (Dkt.

       No. 103) as to Browning's Sixth and Eighth Amendment

       claims.

    Based on its rulings, the Court **SCHEDULES** a status conference

on **Wednesday, April 29, 2015, at 1:30 P.M.** to schedule this case

for trial.

    It is so **ORDERED**.

    Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of

Court to enter a separate judgment order and to transmit copies of

both orders to counsel of record and to the <u>pro</u> <u>se</u> plaintiff,

certified mail, return receipt requested.

Dated:  March 20, 2015.


                                    /s/ Irene M. Keeley
                                    IRENE M. KEELEY
                                    UNITED STATES DISTRICT JUDGE